Merrimack,
No. 4667.

EASTERN TRANSPORTATION CO. & a.

*v.*

LIBERTY MUTUAL CASUALTY COMPANY & a.

Argued September 3, 1958.

Decided October 7, 1958.

*Devine & Millimet (Mr. Millimet* orally), for the plaintiffs.

*Booth, Wadleigh, Langdell, Starr & Peters (Mr. Peters* orally), for defendant Liberty Mutual Casualty Company.

*Upton, Sanders & Upton (Mr. Frederic K. Upton* orally), for the defendant Samuel S. Bundy.

*McLane, Carleton, Graf, Greene & Brown* and *Robert A. Raulerson* for the defendants Lucretia J. Weed, Frederick R. Weed and Peter R. Weed, furnished no brief.

WHEELER, J. There is no dispute about any of the essential facts. The petition resulted from an automobile collision on December 21, 1955, on the Daniel Webster Highway in Hooksett, between an automobile operated by Peter R. Weed, in which the defendant Samuel S. Bundy was riding as a passenger, and a disabled tractor-trailer owned by Eastern. Plaintiff Eastern is a common carrier by motor vehicle, whose principal stockholder is one Samuel Rosenblatt. The Eastern vehicle involved in the accident consisted of a Brockway truck-tractor to furnish the motive power to which was attached a Gramm semi-trailer. The unit was insured by an automobile liability policy issued by the plaintiff American Fidelity and Casualty Company.

Prior to the accident Emerson regularly engaged Eastern to transport and deliver its furniture to customers and it was engaged in this mission at the time of the accident. The Emerson truck, a GMC straight job truck was insured by an automobile liability policy issued by Liberty.

On the day of the accident one Ela, an employee of Eastern, was stationed at the Emerson plant to supervise the loading and unloading of Eastern trucks and was assisted by one Dickerson, a

truck driver for Eastern. The Eastern trailer-truck involved in the accident was loaded by Ela with bedroom furniture at the Emerson plant and proceeded on its way toward its destination. It had gone but a short distance when it became disabled and was removed to a nearby filling station. After efforts to start the motor failed, Mr. Rosenblatt was summoned from Massachusetts and arrived in due course with a mechanic. Further efforts to start the tractor motor were unsuccessful and Rosenblatt sent Ela to the Emerson plant to borrow a truck to tow the stalled Eastern vehicle. Ela, with permission of Emerson's duly authorized agent, secured a truck and returned to Eastern's disabled tractor-trailer unit. A tow chain was attached from the rear of the Emerson truck to the front of the Eastern vehicle. Rosenblatt directed Ela to operate the Emerson truck and assigned Dickerson to steer the Eastern tractor. The tow commenced and proceeded some three miles southerly along the Daniel Webster Highway and despite efforts of Dickerson and Rosenblatt's mechanic it was impossible to start the Eastern vehicle. The vehicles came to a stop on the traveled portion of the highway, and were in that position when struck in the rear by the motor vehicle operated by Weed in which Bundy was riding as a passenger, and as a result of the collision Bundy received severe personal injuries.

The first contention of the defendant Liberty is that it is under no obligation to defend anyone involved in the accident because of exclusion (c) of the policy which provides:

"*This policy does not apply . . .*

"(c) under coverages A and B [bodily injury and property damage coverages], while the automobile is used for the towing of any trailer owned or hired by the insured and not covered by like insurance in the company . . . . "

The obvious purpose of this exclusion is to protect the insurance company against the additional risk involved to the insured vehicle by increasing its carrying capacity when used as a towing vehicle. The policy does not exclude all towing nor does it exclude towing all trailers. It only purports to exclude the towing of trailers *"owned or hired"* by the insured and not covered by insurance in the same company. These words clearly indicate the limitations of the exclusion.

A tractor and trailer have different definitions in our motor vehicle statute. " 'Tractor,' any self-propelled vehicle designed, or used as a traveling power plant or for drawing other vehicles,

but having no provision for carrying a load." RSA 259:1 XXXI. " 'Trailer,' any vehicle without motive power designed for carrying property or passengers wholly on its own structure and for being drawn by self-propelled vehicle . . . . " RSA 259:1 XXXII.

The Emerson truck was towing a trailer as part of a tractor-trailer unit and the towing of the trailer was incidental to towing the tractor. The Emerson truck was used solely for the purpose of reactivating the Eastern tractor's motive power.

The trailer exclusion is to be given the meaning which a reasonable person in the position of the insured would give it. *Farm Bureau Ins. Co.* v. *Manson,* 94 N. H. 389, 392. We are of the opinion that the towing of a temporarily disabled motor vehicle for the purpose of starting it whether it happens to be a tractor-trailer unit or other motor vehicle does not come within the exclusion. *Littlefield* v. *Insurance Co.,* 86 N. H. 87; *Jenkins* v. *Deane,* 103 L. J. K. B. (N. S.) [1934] 250.

Liberty takes the further position that it is under no obligation to defend because the Emerson truck was not being used for a commercial purpose within the meaning of the policy. This contention requires little discussion. The policy Liberty issued to Emerson stated its occupation to be "furniture manufacturing" and declared that the purposes for which the truck was to be used were ".Commercial." The policy defines "commercial" as follows: "The term 'commercial' is defined as use principally in the business occupation of the named insured, including occasional use for personal, pleasure, family and other business purposes."

It was not the practice to use the Emerson truck for towing other vehicles. In fact it does not appear that it was ever used for that purpose. If the policy contained no other provisions of use than "use principally in the business occupation of the named insured" it could still be argued that at the time of the accident it was furthering its own business interest in expediting delivery of its furniture. But the provisions of the definition of "commercial" use permits a much broader use of the vehicle "including occasional use for personal, pleasure, family and other business purposes." The insurance policy does not further restrict the use of the Emerson vehicle and we are of the opinion that the towing of the disabled Eastern vehicle was permitted under the terms of the policy. *Littlefield* v. *Insurance Co.,* 86 N. H. 87; *Farm Bureau Ins. Co.* v. *Manson,* 94 N. H. 389.

The Trial Court ruled that Liberty was required to extend

limited coverage but was not required to defend for any violation of the law by the Eastern tractor-trailer unit not caused by the operation of the Emerson truck. It is contended by defendant Bundy that his injuries were "caused by accident and arising out of the . . . use of the automobile."

Under general insuring agreements Coverage A Liberty agreed to pay "on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile."

Among other acts of negligence alleged by Bundy as a basis for recovery was the absence of lights in the rear of the Eastern truck, the failure of the Emerson truck to comply with the statutes relating to lights, reflectors, placing of flares and illegal parking.

It was agreed that the Emerson truck placed the Eastern vehicle in the position it occupied in the highway at the time of the accident. It was moved by means of the Emerson truck from a place of safety in the filling station yard to a place of potential danger. The Liberty policy does not require a finding that the injury to Bundy was directly and proximately caused by the use of the Emerson vehicle but only that the injuries were caused by accident "arising out of the ownership, maintenance or use of the automobile." *Everett* v. *Company*, 94 N. H 43; *Red Ball Motor Freight* v. *Employers Mut. Liability Co.*, 189 F. (2d) 374 (5th Cir. 1951); *Schmidt* v. *Utilities Ins. Co.*, 353 Mo. 213.

We are of the opinion that it could be found that the accident arose out of the permitted use of the Emerson vehicle. If Eastern was under liability by reason of defective equipment on its own unit or by reason of any failure to display lights or flares, that liability under the circumstances of this case nevertheless also arose out of the use of the Emerson truck made by Eastern as an insured under the Liberty policy. Consequently full coverage should be afforded by Liberty against any claims by Bundy in his tort action based upon the violation of statutory requirements with respect to lights, reflectors, parking, or the use of flares.

The rulings of the Trial Court limiting the coverage afforded by Liberty are set aside and a declaratory judgment should be entered for the plaintiffs.

*Judgment for the plaintiffs.*

All concurred.