INSURANCE COMPANY OF NORTH
AMERICA, Plaintiff-Appellant,

v.

ROYAL INDEMNITY COMPANY,
Defendant-Appellee.

No. 20085.

United States Court of Appeals,
Sixth Circuit.

Aug. 6, 1970.

John P. Sandidge, Louisville, Ky., for plaintiff-appellant; Fielden Woodward, Louisville, Ky., on brief; Woodward, Hobson & Fulton, Louisville, Ky., of counsel.

William A. Miller, Louisville, Ky., for defendant-appellee.

Before WEICK, CELEBREZZE and PECK, Circuit Judges.

WEICK, Circuit Judge.

This appeal involves a controversy between two liability insurance companies as to the proportionate part which each should bear of the amount paid to the estate of Kenneth Williams, deceased, in settlement of a claim for wrongful death arising out of a head-on collision between a tractor-trailer unit and Williams' pickup truck.

The District Court granted summary judgment in favor of Royal Indemnity (Royal), holding that Royal is liable for ½₁st of the amount paid in settlement and that Insurance Company of North America (INA) is liable for ²⁰⁄₂₁sts of the amount paid in settlement. INA has appealed. We affirm.

The controlling facts are not in dispute. INA is the insurer of the T. R. Miller Mill Company, Inc. (Miller). Royal is the insurer of the Hertz Corporation (Hertz) and its insured lessees. Miller leased from Hertz a diesel tractor to pull its empty trailer from Louisville to Carrollton, Kentucky, for use there in delivering power line poles to its customers.

The tractor leased to Miller, while attached to and pulling its trailer, was being operated by an employee of Miller, when the unit went out of control, crossed to the left of the center of the highway, and collided head-on with the truck operated by Kenneth Williams (which truck was traveling in the opposite direction), causing Williams' death.

The suit of Williams' estate against Miller was settled by Royal and INA for $157,500, to which settlement Royal contributed $52,000, and INA contributed $105,000. The parties reserved the right to litigate the question of their respective liabilities under the terms of their policies.

INA brought the present action in the District Court against Royal to recover $47,500, plus interest, on the theory that Royal is liable under its policy of insurance for primary coverage on the hired tractor, and INA is liable only for the excess over Royal's coverage of $100,000 [1]. Jurisdiction of the Court was based on diversity of citizenship.

Royal filed a counterclaim for $45,000, plus interest, alleging that under the INA policy issued to Miller, INA is primary insurer of the trailer; that the accident which resulted in the death of Williams arose out of the use of both the tractor and the trailer; and that, therefore, the policies should prorate in accordance with their respective provisions, i. e., in the ratio which their respective limits bore to the total applicable limits of both policies [2]

Both parties moved for summary judgment. The District Court granted Royal's motion, holding that Royal was the primary insurer of the tractor leased to Miller and that INA was the primary insurer of the trailer; that the accident resulting in the death of Williams arose

1. $47,500 is the difference between Royal's contribution of $52,500 and the $100,000 which INA contends Royal should have contributed to the settlement.

2. INA's applicable limit is $2,000,000. Royal's applicable limit is $100,000. The

total applicable limit of all valid and collectible insurance is $2,100,000. Royal contends that its pro rata share of the settlement should have been $7,500 (½₁st of $157,500). It contributed $52,500, and seeks to recover the difference, $45,000, plus interest.

out of the use of the trailer as well as the use of the tractor; and that the pro rata provisions of both policies were applicable.

INA insured Miller and its employees under a Blanket Liability and Automobile Policy. The policy also covered the trailer owned by Miller [3]. The tractor was owned by Hertz and leased to Miller. Under the INA policy, the tractor is a "hired automobile" [4]. Under a provision dealing with other insurance, INA is liable only for excess insurance over any other valid and collectible insurance available to the insured in respect to coverage of a "hired automobile" [5].

Royal admits that it is the primary insurer of the tractor, and contends that under both policies INA is excess insurance as to the tractor. However, Royal contends that INA is the primary and sole insurer of the trailer as Royal's policy did not insure the trailer.

■ INA's policy provides that it is liable to pay damages because of bodily injury caused by an occurrence, and arising out of the maintenance or use of any automobile [6]. The trailer is covered under the term "automobile". See fn. 3 *supra*. INA's policy further provides that the insurance afforded by INA is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance [7].

The only relevant provision of the INA policy respecting excess or contingent insurance is the provision that INA's policy shall be excess insurance with respect to a "hired automobile" or "non-owned automobile." See fn. 5 *supra*.

As stated before, the trailer was owned by Miller, the named insured. It was not a "hired automobile" or "non-owned automobile"; therefore, the INA policy is primary insurance on the trailer.

■ INA contends that Royal is the primary insurer of the trailer as well as the tractor. This contention is based on a trailer endorsement attached to the Royal policy. In the basic policy of Royal, "Exclusion C" provides:

"This policy does not apply:

"(c) Under coverage A and B [Bodily Injury and Property Damage], while the automobile is used for the towing of any trailer owned or hired by the insured, and not covered by like insurance in the company; or while any trailer covered by this policy is used with any automobile owned or hired by the insured and not covered by like insurance in the company."

---

3. "When used in this policy (including endorsements forming a part hereof):
    "AUTOMOBILE—'automobile' means a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto), but does not include mobile equipment; * * *."

4. "HIRED AUTOMOBILE—'hired automobile' means an automobile not owned by the Named Insured which is used under contract in behalf of, or loaned to, the Named Insured, provided such automobile is not owned by or registered in the name of (a) a partner or executive officer of the Named Insured or (b) an employee or agent of the Named Insured who is granted an operating allowance of any sort for the use of such automobile; * * *."

5. "With respect to a hired automobile or a non-owned automobile, this insurance shall be excess insurance over any other valid and collectible insurance available to the Insured."

6. "INA will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence and arising out of (1) the ownership, maintenance or use, including loading and unloading of any automobile * * *."

7. "Other Insurance (40a)
    "The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance."

"Exclusion C" was deleted and a "Trailer Endorsement" was substituted, which provides:

## "TRAILER ENDORSEMENT

"It is understood and agreed that exclusion 'C' of the policy is deleted.

"It is further understood and agreed that the insurance afforded the insured applies to the ownership, maintenance or use of (1) trailers leased to the lessee by the named insured except while attached to, or being coupled to or uncoupled from, a motor vehicle other than a tractor leased from the named insured and covered by like insurance in the company; and (2) trailers which are owned by the lessee or for which he is legally liable, but only while such trailer is attached to, or being coupled to or uncoupled from, a tractor leased from the named insured and covered by like insurance in the company.

"It is further understood and agreed that the insurance afforded the named insured applies to the ownership, maintenance or use of any trailer."

The purpose of "Exclusion C" is to require an insured to declare and pay premium for the use of trailers, and to keep tractors and trailers insured by the same company. Since Hertz is in the leasing business, it leases both tractors and trailers separately. If a lessee leased a tractor but used his own trailer, under Exclusion C there would be no coverage on the tractor or the trailer since it would not be covered by like insurance in the same company. Therefore, the "Trailer Endorsement" was substituted for "Exclusion C".

With respect to trailers owned by the lessee, the endorsement still provides that a trailer is covered under the Royal policy only when attached to a tractor leased from Hertz and insured by Royal with the same insurance as the tractor; however, it permits coverage to the lessee for the tractor.

Royal admits that it is primary insurer of the tractor. The "Trailer Endorsement" did not extend this coverage to the trailer owned by Miller. On the contrary, it permitted coverage of the tractor, even though attached to a trailer that was not insured by Royal.

The final contention of INA is that the accident which resulted in the death of Kenneth Williams did not arise "out of the ownership, maintenance or use" of the trailer. If the accident did not "arise out of the * * * use" of the trailer, INA is liable only as excess insurer of the tractor, even though it is primary insurer of the trailer.

In 89 A.L.R.2d 150 (1963) there is an extensive analysis of cases dealing with the meaning of the clause "arising out of the ownership, maintenance or use" of a vehicle. On page 153 it is stated:

"All the cases agree that a causal relation or connection must exist between an accident or injury and the ownership, maintenance, or use of a vehicle in order for the accident or injury to come within the meaning of the clause 'arising out of the ownership, maintenance or use' of a vehicle, and where such causal connection or relation is absent coverage will be denied. The difficulty therefore relates mainly to the determination whether or not there was under the facts of the particular case the required causal relationship."    (Footnotes omitted)

This annotation has been recently cited with approval by the Kentucky Courts. United States Fid. & Guar. Co. v. Western Fire Ins. Co., 450 S.W.2d 491, 493 (Ky.1970). See Richland Knox Mut. Ins. Co. v. Kallen, 376 F.2d 360 (6th Cir. 1967).

The words "arising out of * * * use" in an automobile liability insurance policy, are broad, general and comprehensive terms meaning "originating from," or "having its origin in,"

"growing out of" or "flowing from" [8] See Carter v. Bergeron, 102 N.H. 464, 160 A.2d 348 (1960); Schmidt v. Utilities Ins. Co., 353 Mo. 213, 182 S.W.2d 181 (1944).

■ The phrase "arising out of the use of the automobile" does not require a finding that the injury to Williams was directly and proximately caused by the use of the trailer. See Manufacturers Cas. Ins. Co. v. Goodville Mut. Cas. Co., 403 Pa. 603, 170 A.2d 571 (1961); Eastern Transp. Co. v. Liberty Mut. Co., 101 N.H. 407, 144 A.2d 911 (1958).

All that is required to come within the meaning of the words "arising out of the * * * use of the automobile" is a causal connection with the accident. Richland Knox Mut. Ins. Co. v. Kallen, *supra*; Manufacturers Cas. Ins. Co. v. Goodville Mut. Cas. Co., *supra*. See 89 A.L.R.2d 150 (1963).

The District Court found:

"There was no evidence that the trailer was defective or physically came in contact with the Williams vehicle, and it did not figure in the accident other than being a part of the tractor-trailer unit."

INA contends that under the finding of the District Court the accident did not "arise out of the use" of the trailer since "it did not figure in the accident other than being a part of the tractor-trailer unit." [9]

In Eastern Transp. Co. v. Liberty Mut. Cas. Co., 101 N.H. 407, 144 A.2d 911 (1958), Eastern owned a tractor-trailer unit which was insured by American Fidelity and Casualty Company. The tractor-trailer became disabled. Eastern borrowed a GMC truck from the Emerson Company to tow the stalled tractor-trailer unit. The GMC truck was insured by Liberty Mutual. After towing the unit for three miles, the truck and the tractor-trailer unit came to a stop on the traveled portion of the highway, and were in that position when the Eastern tractor-trailer unit was struck in the rear by an automobile, resulting in injury to a passenger in the automobile. Eastern sought a declaratory judgment requiring Liberty Mutual, the insurer of the truck, to defend the tort action. One of Liberty Mutual's contentions was that the accident resulted from the absence of lights in the rear of the Eastern tractor-trailer unit, and that the accident did not "arise out of the use" of the GMC truck. The New Hampshire Supreme Court held that the accident arose out of the use of the GMC truck which Liberty Mutual insured, even though liability for the accident was based on the fact that the tractor-trailer unit did not have rear lights.

In American Fire & Cas. Co. v. Allstate Ins. Co., 214 F.2d 523 (4th Cir. 1954), the owner of a Chrysler automobile, while towing his jeep, crossed the center line of the highway and struck another automobile. The Chrysler was insured by Allstate and the jeep was insured by American Fire & Casualty. The insurer of the jeep contended that the accident did not "arise out of the use" of the jeep since it was being towed at the time of the occurrence. The Court held that the jeep was being

---

8. In 7 Appleman, Insurance Law and Practice, § 4316, p. 142, it is stated:

"The term 'use' is the general catchall of the insuring clause, designed and construed to include all proper uses of the vehicle not falling within one of the previous terms of definition. It is limited to the purpose for which the coverage is designed, namely, that the vehicle

1. Must be used for the purpose set forth in the declarations;

2. Must be pleasure or business, or commercial, as defined in the policy."

9. The braking system of the tractor-trailer was connected by service and emergency brake airlines which operated first on the trailer and then on the tractor in order to prevent jackknifing. Just prior to the accident the right front wheel of the tractor went off the pavement and the tractor "wobbled". The driver applied the brakes and the tractor-trailer unit veered to the left, jackknifed and collided with Williams' truck.

used at the time of the accident within the meaning of the insurance policy.

 In our factual context, the trailer was being used for the purpose it was designed, *i. e.*, it was being used in Miller's business and was attached to a tractor. The fact that the trailer did not come into physical contact with Williams' automobile is not determinative. The trailer was being used at the time of the accident. It cannot be said that the occurrence did not "arise out of the use" of the trailer. The accident resulting in the death of Williams arose out of the use of both the tractor and the trailer. Royal is primary insurer on the tractor and INA is primary insurer on the trailer.

Both insurance policies provided that in the event that two or more companies are liable on the same basis for a loss, the policies should prorate in accordance with their respective provisions, *i. e.*, in the ratio which the applicable limit of policy bears to the total applicable limit of all valid and collectible insurance.

The District Court properly found that both INA and Royal were primary insurers and prorated the liability. In our opinion this determination was correct.

The judgment of the District Court is affirmed.