NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0027n.06

No. 09-6368

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jan 12, 2011**
LEONARD GREEN, Clerk

CAPITOL SPECIALTY INSURANCE,       )
                                   )       ON APPEAL FROM THE
    Plaintiff-Appellee,        )       UNITED STATES DISTRICT
                                   )       C O U R T   F O R   T H E
v.                                 )       WESTERN DISTRICT OF
                                   )       KENTUCKY
INDUSTRIAL ELECTRONICS, LLC, et al.,   )
                                   )       O P I N I O N
    Defendants-Appellants.     )


BEFORE:     BOGGS and McKEAGUE, Circuit Judges; and QUIST, Senior District Judge.[*]

**QUIST, District Judge.**  Defendants, Industrial Electronics, LLC ("Indel") and Yuriy Osyka

("Osyka"), appeal the district court's grant of summary judgment to Plaintiff, Capitol Specialty

Insurance ("Capitol"), concluding that Capitol has no duty to defend or indemnify Indel and Osyka

in a lawsuit filed in Jefferson Circuit Court.  For the reasons that follow, we affirm the judgment of

the district court.

## I. BACKGROUND

Osyka was employed by Industrial Control Solutions, Inc. ("ICS"), a Kentucky corporation

engaged in the repair of industrial electronic equipment, from May 2002 to October 2005.  In May

2002, and again in March 2003, Osyka entered into employment agreements with ICS.  The

employment agreements set Osyka's compensation and contained, among other things, non-compete

---

[*]Honorable Gordon J. Quist, United States Senior District Judge for the Western District of
Michigan, sitting by designation.

and confidentiality provisions. These provisions prohibited Osyka from competing with ICS or disclosing ICS's confidential information or trade secrets during his employment and for a period of two years from the end of his employment.

In October 2005, Osyka left his employment with ICS, apparently due to a dispute regarding his compensation. Within a few months of his departure, Osyka was hired by Indel, a newly-formed company that was also in the electronics repair business. ICS claims that after Osyka joined Indel, he disclosed to Indel customer and pricing lists and other proprietary information from ICS computer files, and that Indel used this information to its advantage and to the detriment of ICS.

In August 2008, ICS sued Osyka and Indel in Jefferson Circuit Court. That suit gave rise to the instant dispute.[1] The underlying state-court complaint alleged three claims: (1) that Indel tortiously interfered with ICS's business relationship with Osyka by "intentionally and improperly" using ICS's trade secrets and proprietary information; (2) that Osyka breached his contract with ICS by disclosing proprietary and trade secret information to Indel; and (3) that Indel's and Osyka's actions violated KRS § 365.880, the Kentucky Uniform Trade Secrets Act. ICS confirmed in its complaint that "[t]he [alleged] dissemination of information . . . forms the basis for the tortuous [sic] claims and the breach of contract claim."

---

[1]At the time Osyka left ICS, ICS suspected Osyka had taken various files and information that ICS considered trade secrets or confidential information. ICS claims that an examination of the hard drive of Osyka's ICS computer revealed that Osyka had deleted various files from his computer during the two or three months before he left ICS. This information formed the basis of a separate lawsuit by ICS against Osyka in Jefferson Circuit Court in October 2007, alleging that Osyka destroyed ICS's property, i.e., its computer files.

Indel notified Capitol of the underlying action pursuant to a commercial general liability policy (the "Policy") that Capitol had issued to Indel. The initial Policy term was from April 17, 2006 through April 17, 2007, and it was subsequently renewed for the periods April 17, 2007 through April 17, 2008, and April 17, 2008 through April 17, 2009. Capitol agreed to defend Indel and Osyka in the underlying action under a reservation of rights.

Capitol filed the instant action on November 24, 2008, seeking a declaration that it has no duty to defend or indemnify Indel and Osyka in the underlying state court action. Following discovery, Capitol moved for summary judgment. Capitol argued that the allegations of the underlying action fell outside the Policy's coverage for "personal and advertising injury" which, all parties agreed, was the only possible basis for coverage. In addition, Capitol argued that even if ICS's allegations triggered personal and advertising injury coverage, various exclusions applied. One exclusion Capitol cited, for Breach of Contract, excluded coverage for "'[p]ersonal and advertising injury' arising out of a breach of contract, except an implied contract to use another's advertising idea in your 'advertisement.'" Another exclusion, Infringement of Copyright, Patent, Trademark or Trade Secret, excluded "'[p]ersonal and advertising injury' arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights."

The district court granted Capitol's motion on October 14, 2009. It first concluded that the misappropriation of customer and price lists alleged in the underlying action did not constitute advertising injury. In doing so, the court rejected Indel's arguments that its use of the word "obsolete" on its website and its statements to ICS's customers that it had better prices and services than ICS were wrongful acts giving rise to advertising injury. (10/14/09 Mem. Op. at 6.) Rather

than Indel's advertising, the district court observed, ICS's alleged injuries arose from Osyka's disclosure, and Indel's use, of ICS's customer and pricing lists. (*Id.*) The district court also recognized that Kentucky courts had not specifically addressed whether use of trade secrets constitutes an "advertising injury" and that other jurisdictions were split on the issue. After considering cases coming down on both sides, the district court determined that Kentucky courts would side with those courts holding that misappropriation of customer and price lists does not constitute "advertising injury." Recognizing "the split of authorities on this issue and Kentucky's strong preference for finding coverage," however, the district court held in the alternative that even if ICS alleged advertising injury, the Infringement of Copyright, Patent, Trademark and Trade Secret exclusion barred the tortious interference and statutory claims and the Breach of Contract exclusion barred the breach of contract claim. (*Id.* at 7-8.)

This timely appeal followed.

## II. STANDARD OF REVIEW

This court reviews *de novo* a motion for summary judgment. *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007). Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[2]

---

[2]Pursuant to the 2010 amendments to Rule 56, former subdivision (c)(2), which contained the summary judgment standard, has been redesignated as subdivision (a).

## III. ANALYSIS

In the district court, and again on appeal, the parties cite cases from jurisdictions other than Kentucky to support their respective positions on the existence of advertising injury coverage. We need not decide whether Kentucky courts would adopt the more restrictive view that misappropriation of customer and price lists is not advertising injury, as the district court concluded and Capitol urges, or whether Kentucky courts would adopt a more liberal view, as Indel and Osyka urge, because we conclude that the Breach of Contract exclusion excludes coverage for all of the underlying claims. For the same reason, we need not determine whether the district court erred in concluding that coverage is excluded under the Infringement of Copyright, Patent, Trademark or Trade Secret exclusion or whether it applied the correct version of that exclusion.

Under Kentucky insurance law, "terms used in insurance contracts should be given their ordinary meaning as persons with the ordinary and usual understanding would construe them." *Motorists Mut. Ins. Co. v. RSJ, Inc.*, 926 S.W.2d 679, 681 (Ky. Ct. App. 1996) (internal quotation marks and citation omitted). As a matter of public policy, Kentucky courts hold that an insurance contract should be liberally construed and any doubts about coverage resolved in favor of the insured. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 564 (6th Cir. 2008) (quoting *Dowell v. Safe Auto Ins. Co.*, 208 S.W.3d 872, 878 (Ky. 2006)). Exclusions are subject to a similar rule, *see Eyler v. Nationwide Mut. Fire Ins. Co.*, 824 S.W.2d 855, 859 (Ky. 1992) (stating that "Kentucky law is crystal clear that exclusions are to be narrowly interpreted and all questions resolved in favor of the insured"), with exclusions and exceptions to coverage strictly construed to render the insurance effective. *See State Auto. Mut. Ins. Co. v. Trautwein*, 414 S.W.2d 587, 589 (Ky. 1967). Where a

policy term is ambiguous, the court must interpret the ambiguity in favor of the insured's reasonable expectations and construe it as an average person would construe it. *See True v. Raines*, 99 S.W.3d 439, 443 (Ky. 2003). This doctrine applies, however, only where there is an ambiguity. Moreover, "[o]nly actual ambiguities, not fanciful ones, will trigger application of the doctrine." *Id.* Clear and unambiguous terms of an insurance policy will thus be enforced as written. *Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 873 (Ky. 2002). Thus, as the Kentucky Supreme Court has observed:

> The rule of strict construction against an insurance company certainly does not mean that every doubt must be resolved against it and does not interfere with the rule that the policy must receive a reasonable interpretation consistent with the parties' object and intent or narrowly expressed in the plain meaning and/or language of the contract. Neither should a nonexistent ambiguity be utilized to resolve a policy against the company. We consider that courts should not rewrite an insurance contract to enlarge the risk to the insurer.

*St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 226-27 (Ky. 1994).

The Breach of Contract exclusion excludes coverage for personal and advertising injury "arising out of a breach of contract, except an implied contract to use another's advertising idea in your 'advertisement.'" The language of this exclusion is clear and unambiguous. Because nothing in the record suggests that Indel and/or Osyka had an implied contract with ICS, and ICS's customer and price lists cannot reasonably considered an "advertising idea" (and Indel and Osyka do not argue otherwise), the only issue is whether ICS's claims arise out of a breach of contract.

In *Hugenberg v. West American Insurance Company/Ohio Casualty Group*, 249 S.W.3d 174 (Ky. App. 2006), the Kentucky Court of Appeals considered an exclusion in an automobile policy

for "bodily injury . . . [a]rising out of . . . [t]he ownership, maintenance, use, loading or unloading

of motor vehicles . . . owned or operated by or rented or loaned to an 'insured.'" *Id.* at 186. The

court concluded that the phrase "arising out of" should be "construed expansively." *Id.*

> The words 'arising out of * * * use' in an automobile liability insurance policy are broad, general and comprehensive terms meaning 'originating from,' or 'having its origin in,' 'growing out of' or 'flowing from' . . . . All that is required to come within the meaning of the words 'arising out of the * * * use of the automobile' is a casual connection with the accident.

*Id.* (quoting *Ins. Co. of N. Am. v. Royal Indem. Co.*, 429 F.2d 1014, 1017-18 (6th Cir. 1970))

(footnote omitted and asterisks in original). Although *Hugenberg* involved an automobile policy

rather than a comprehensive general liability policy, as in the instant case, we find no reason for not

according the phrase "arising out of" the same broad application here. Moreover, this Court has

given the phrase the same broad application it applied in *Royal Indemnity*, *supra*, in cases involving

general comprehensive liability policies. *See Assurance Co. of Am. v. J.P. Structures, Inc.*, Nos. 95-

2384, 96-1010, 96-1027, 1997 WL 764498, at *5 (6th Cir. Dec. 3, 1997) (stating that "'arising out

of' is 'ordinarily understood to mean "originating from," "having its origin in," "growing out of" or

"flowing from" or in short, "incident to or having a connection with"'") (quoting *Red Ball Motor*

*Freight, Inc. v. Emp'rs Mut. Liab. Ins. Co.*, 189 F.2d 374, 378 (5th Cir. 1951)).

Given the broad meaning of the term "arising out of," we hold that ICS's claims against both

Osyka and Indel arose directly from Osyka's breach of contract. In other words, Indel's use of ICS's

proprietary and trade secret information – the basis of both the tortious interference and statutory

claims – grew out of, or flowed from, Osyka's dissemination of such information to Indel. Without

Osyka's breach, Indel would have no information. Indel does not contend otherwise, but argues

instead that this exclusion is inapplicable because ICS sued only Osyka for breach of contract. In other words, Indel contends that in order for the exclusion to apply to it, ICS must have asserted a breach of contract directly against Indel. Indel further contends that any personal and advertising injury arose from the allegations against Indel, not from the alleged breach of contract.

Indel's arguments lack merit because the language of the exclusion is not so limited. Instead, it merely requires that the injury arise out of "*a* breach of contract." (Emphasis supplied.) This condition would be satisfied whether Osyka, Indel, or some other party breached a contract, and even regardless of whether ICS actually pled a breach of contract claim, so long as the asserted claims arose out of the breach. The Fifth Circuit rejected an argument similar to Indel's, based on virtually identical facts, in *Gemini Insurance Co. v. Andy Boyd Co.*, 243 F. App'x 814 (5th Cir. 2007). In *Gemini Insurance*, Fuentes was a former employee of ASC who quit and went to work for ABCO, a competitor of ASC. ASC sued Fuentes and ABCO alleging that Fuentes took customer lists and other confidential information from ASC and disclosed it to ABCO, which used the information to obtain ASC's customers. ABCO argued that the breach of contract exclusion did not apply because the policy contained a "separation-of-insureds" provision, which stated that the policy functioned as a separate policy for each insured. The court rejected the argument, noting that the provision did not apply under the circumstances because whether the injury arose from a breach of contract was a readily determined fact that did not fall within the policy's coverage provisions. *Id.* at 816. Moreover, the court observed: "[F]or the breach of contract exclusion to apply, the breach of contract need not have caused the injuries. Instead, the breach of contract must merely have had an incidental relationship to or connection with the injuries." *Id.* Although Indel does not rely on a

"separation-of-insureds" provision in this case, it does suggest that it must have separately breached a contract for the exclusion to apply. But, as the Fifth Circuit observed, the broad language of the exclusion requires only that the alleged injuries be incidentally related or connected to the breach of contract, which, as explained above, is true in this case. Thus, Capitol owes no duty to defend.

## IV. CONCLUSION

Accordingly, the district court's judgment is **AFFIRMED**.