**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant,**

v.

**KENTUCKY FARM BUREAU MUTUAL INSURANCE COMPANY, Appellee.**

Court of Appeals of Kentucky.

June 15, 1984.

Lee E. Sitlinger, Bennett, Bowman, Triplett & Vittitow, Louisville, for appellant.

Robert H. Measle, Fowler, Measle & Bell, Lexington, for appellee.

Before COMBS, LESTER * and REYNOLDS, JJ.

COMBS, Judge.

This action is between two no-fault carriers, and is before us on an Agreed Statement of the case.

On January 11, 1982, appellee's insured, John Eldridge, Jr., was driving his Chevrolet Luv pickup truck northbound on U.S. 68 in Fayette County, when the engine died and his vehicle stalled. His son was following in another vehicle. He pulled in front of his father's stalled vehicle and stopped. Mr. Eldridge then commenced trying to connect his vehicle to his son's vehicle by

* Judge Lester was unable to sit with the Panel during oral argument. Counsel for the parties executed Waiver agreeing that in the absence of the third judge, Judges Combs and Reynolds could hear oral argument and render a decision. The written waiver is filed with the record herein. Prior to and subsequent to the oral argument, Judge Lester reviewed the briefs and record, and joins Judges Combs and Reynolds as the third member of the panel in making this decision.

the use of a tow rope or chain, preparatory to towing his vehicle to a service station for necessary repairs.

While attempting to connect the two vehicles, appellant's insured Datsun truck, owned by Robert Lavelle, struck the rear of the Eldridge truck forcing it into his son's vehicle and pinning Mr. Eldridge between the two vehicles. Mr. Eldridge died as a result of the injuries sustained in the collision.

Appellee paid basic reparation benefits and then sought reimbursement from the appellant, contending that appellant was primarily liable for the benefits under the facts of the case and applicable statutes.

The following questions were presented to the trial court:

(A) Is a person injured while engaged in attaching a tow chain to his disabled vehicle when his disabled vehicle is struck by a moving vehicle, (1) a "pedestrian" or (2) a person making "use of a motor vehicle" under the Kentucky Motor Vehicle Reparations Act?

(B) If such person is a "pedestrian", is the insurer of the disabled vehicle which struck his person (Farm Bureau) primarily liable for payment of basic reparation benefits under KRS 304.39–050(1), or is the insurer of the moving vehicle (State Farm) primarily liable for payment of basic reparation benefits on the theory that the disabled vehicle was the "striking" vehicle as provided in KRS 304.39–050(1)?

Both parties filed motions for summary judgment. After considering the record, the court sustained Farm Bureau's motion, and State Farm appealed.

The parties have favored us with both excellent briefs and oral arguments. Apparently these two questions have not been specifically answered by this court since the adoption of the Kentucky Motor Vehicle Reparations Act.

The trial court ruled in favor of appellee, Farm Bureau, on both issues holding that John Eldridge, Jr., was a "pedestrian" under KRS 304.39–050(1) and KRS 304.39–020(6) and that since he was a "pedestrian," the insurer of the moving vehicle was primarily liable for payment of basic reparation benefits under KRS 304.39–050(1) even though the disabled vehicle made contact with him on the theory that the disabled vehicle was an extension of the moving vehicle, and that the force which fatally injured the "pedestrian" came from the moving vehicle. The stationary vehicle could not "strike" anyone.

We reverse.

KRS 304.39–020(6) provides:

"[U]se of a motor vehicle" means any utilization of the motor vehicle as a vehicle including occupying, entering into and alighting from it. *It does not include (i) conduct within the course of a business of repairing, servicing, or otherwise maintaining motor vehicles unless the conduct occurs off the business premises,* .... (Emphasis ours).

Had the Legislature omitted the last sentence in this statute, commencing with the phrase "it does not include ...," we would have no difficulty in affirming this case. Obviously, the Legislature saw fit to elaborate upon the "use of a motor vehicle" in Kentucky. The decedent was not acting within the course of his business at the time of the accident nor did it happen on his premises.

We construe subsection (6) of KRS 304.-39–020 as embracing the activities being performed by the decedent at the time of his death. He was utilizing his vehicle in trying to get it to a service station for repairs. He being a user of the vehicle at the time of his accident, the appellee is primarily liable for basic reparation benefits.

Even if this court were to hold that the decedent was a pedestrian, we would reverse. KRS 304.39–050(1) provides that the insurer of "the vehicle *which struck such pedestrian*" will provide the reparation benefits. (Emphasis ours). The decedent's vehicle is the one that physically

"struck" him. The appellee relies on *Royal Indemnity Company v. Government Employees' Insurance Company*, 307 So.2d 458 (Fla.App.1975). Unlike Kentucky's statute, the Florida statute speaks in terms of causation. One purpose of the Motor Vehicle Reparations Act is to provide prompt payment to victims of motor vehicle accidents. KRS 304.39–010(2). In view of the purpose and language of this statute, we hold that the vehicle which actually comes into physical contact with a pedestrian is primarily liable for basic reparation benefits.

For these reasons, the judgment of the Fayette Circuit Court is reversed.

All concur.