### 69465. GEORGIA FARM BUREAU MUTUAL INSURANCE COMPANY v. GREENE et al.
(329 SE2d 204)

BEASLEY, Judge.

The plaintiff insurer Georgia Farm Bureau Mutual Insurance Company (Georgia Farm) appeals from the adverse grant of summary judgment in its action for declaratory judgment. This case involves the construction of the liability portion of an automobile insurance policy.

The principal facts are basically without dispute. Georgia Farm issued a policy providing fleet coverage to vehicles, principally school buses, owned and operated by the Pierce County School District (Pierce County). Under the provisions relating to liability coverage the policy set forth: "To pay on behalf of the insured all sums which

the insured shall become legally obligated to pay as damage because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile."

On May 11, 1983, nine-year-old Marsha Regina Greene (Marsha) was a passenger on a Pierce County school bus which was returning her home in the afternoon. The bus was being driven by a new substitute driver who had not previously driven that route. The bus proceeded on a dirt road which dead-ended onto a paved road. Marsha's home was on the opposite side of the paved road almost directly at the point where the dirt road intersected with the paved road. There was testimony that the bus normally crossed the paved road and let Marsha (and other children who got off at that stop) off in front of her yard so that she did not have to cross the paved highway. On this day, the new driver stopped on the dirt road at the intersection.

The lights on the school bus were flashing, and the driver testified she looked both ways up and down the paved highway before opening the door and permitting the children to exit. Marsha was the first to get out on the dirt portion and began crossing the highway. The bus driver and the children in the bus saw a truck approaching from the left. Various conflicting warnings and instructions were shouted or screamed at Marsha who had just passed the middle of the road. Hearing the shouts, she turned and started to come back when she was struck at approximately the middle of the road. Marsha received numerous injuries for which her mother brought an action against the owner of the truck, Cato Timber Co. (Cato), the driver of the truck, Marvin Soles, the driver of the school bus, Elaine Lee, Pierce County, and its insurer Georgia Farm. Georgia Farm then brought an action for declaratory judgment setting out that it was not liable under the terms of its policy with Pierce County. Named as defendants were the other parties to the damage suit.

The defendants answered, denying the material averments of the complaint, and, after discovery, Marsha and then Cato and Soles in combination filed their motions for summary judgment. The trial judge granted the two motions and denied plaintiff's claim for relief. *Held*:

OCGA § 33-24-51 authorizes limited waiver of governmental immunity by a county or other political subdivision, which, in its discretion, secures liability insurance coverage for bodily injury, death or property damage arising "by reason of ownership, maintenance, operation or use of any motor vehicle" by such political subdivision. The liability is limited to the amount of coverage obtained.

The question for our determination is whether the minor child's injuries arose by reason of the "ownership, maintenance, or use" of the school bus within the purview of the statutory language and that

of the insurance policy.

First, it should be recognized that cases construing the terminology "operation, maintenance and use," especially "use," of a motor vehicle in an insurance policy are appropriate authority for those cases which also involve such terminology with reference to waiver of governmental immunity. See Mitchell v. City of St. Marys, 155 Ga. App. 642, 644-5 (271 SE2d 895) (1980).

This court has adopted a liberal definition of the word "use." In Hartford Accident &c. Co. v. Booker, 140 Ga. App. 3 (230 SE2d 70) (1976), plaintiff, a sanitation driver, had parked his garbage truck close to the curb, got out, took a large garbage collection container with him, walked about 30 feet and was struck by a vehicle. This court quoted from Federated Mut. Implement &c. Ins. Co. v. Gupton, 241 FSupp. 509, 511 (1965): "Exact definition of the term 'use' is elusive, and is not capable of a definition which will leave everyone 'comfortable.' Whether or not an injury arose from the 'use' of a motor vehicle within the contemplation of a liability policy or statute depends upon the factual context of each case. In this setting the term does not imply 'remoteness,' but does extend beyond actual physical contact. And it would seem to extend at least to the point, beyond physical contact, where control over the instrumentality is easily or reasonably at hand, and particularly when it is still being 'utilized.' " In holding that the driver was involved in the "use" of the truck at the time of his injury, the court pointed out that it was clear the vehicle was to be used for collection of refuse or garbage and "[c]ommon sense tells us that the parties certainly contemplated that the garbage truck would be loaded and unloaded and that the garbage to be loaded on said truck would be hauled to the truck by a garbage collection container and that, in many instances, it would be necessary for the driver to walk down the side of the road near his truck in order to collect the garbage." Hartford Accident &c. Co. v. Booker, 140 Ga. App. 3, 7, supra.

Other examples may be cited. In Southeastern &c. Ins. Co. v. Stevens, 142 Ga. App. 562, 564 (236 SE2d 550) (1977), a gun accidentally discharged in a truck. "The question to be answered is whether the injury 'originated from,' 'had its origin in,' 'grew out of,' or 'flowed from' the use of the vehicle." Similar expressions are found in Georgia Farm &c. Ins. Co. v. Nelson, 153 Ga. App. 623 (266 SE2d 299) (1980) — attaching a trailer to a tractor-trailor was a "contemplated use of the tractor"; Jones v. Transamerica Ins. Co., 154 Ga. App. 408 (268 SE2d 444) (1980) — injury "intrinsically" related to the vehicle; Payne v. Southern Guaranty Ins. Co., 159 Ga. App. 67, 68 (282 SE2d 711) (1981) — "[a]lmost any causal connection or relationship will do"; Turner Transp. Co. v. Warner, 168 Ga. App. 358, 359 (308 SE2d 845) (1983) — plaintiff descending from cab of tractor-trailer on lad-

der steps when he slipped and fell; injury was "peculiar" to motor vehicle.

Although Georgia Farm argues that more recent cases have adopted a stricter doctrine as to "use," we find those cases to be distinguishable on their facts. In *Leverette v. Aetna Cas. &c. Co.*, 157 Ga. App. 175 (276 SE2d 859) (1981), plaintiff was using his truck, on an extemporaneous basis, as a platform to pick plums. In *Anderson v. Ford*, 168 Ga. App. 684 (309 SE2d 854) (1983), plaintiff had parked his employer's truck and began to jog about 100 yards to a public telephone. In *Jones v. Continental Ins. Co.*, 169 Ga. App. 153 (312 SE2d 173) (1983) plaintiff had parked and unloaded her car and about 15 minutes later returned for some forgotten items; having retrieved them she stepped into a hole in the driveway. In *City of Rossville v. Britton*, 170 Ga. App. 1 (316 SE2d 16) (1984), plaintiff was injured when a dumpster fell on her foot; two days before, employees of defendant had moved the dumpster upright after emptying it. Thus, in all of these incidents the injury was relatively remote and only tenuously connected with the normal use of the vehicle or some other factor intervened.

Also distinguishable are the cases of *Washington v. Hartford Accident &c. Co.* 161 Ga. App. 431 (288 SE2d 343) (1982) and *Hicks v. Walker County School Dist.*, 172 Ga. App. 428 (323 SE2d 231) (1984), both of which involved intentional acts — the former a shooting, the latter an assault — which occurred in a school bus. The court in each instance found no causal connection or relationship between the use of the vehicle and the injury because the acts were intentional and deliberate and occurred in the vehicle only because that was where the victim happened to be.

Although it is virtually conceded that unloading school children in a safe place is a part of the use of the vehicle, Georgia Farm urges that the child was unloaded at a safe place, to wit, the area immediately to the right of and beside the dirt road, and that that was the limit of the use of the vehicle in performing such chore. Georgia Farm then argues that it was only after the termination of the vehicle's "use," when the child began to cross the paved road, that she was injured.

We do not find such narrow parameters either in our past case law or in any applicable statutes. In *Gazaway v. Nicholson*, 61 Ga. App. 3, 10-11 (5 SE2d 391) (1939) (affirmed *Gazaway v. Nicholson*, 190 Ga. 345 (9 SE2d 154) (1940)), a school bus driver had deposited the children and the minor plaintiff at a filling station which was across a heavily traveled road from where the child proceeded on home. The court pointed out that the driver owed his minor passengers a duty of extraordinary care and diligence for their safety and that "[i]t is, of course, the duty of a bus driver to discharge a passen-

ger at a place of safety; and where a carrier deposits him at a place which it knows will reasonably expose him to unusual and unnecessary peril, it may be held liable for a proximately resulting injury." The court reasoned: "The passenger in question was a boy about seven years of age; and even if it could be said that the place where he was deposited was safe for an adult, it does not necessarily follow that it was safe for a young child. Cases involving an adult, which might be cited as showing that Gazaway and Johnson, the driver, are not liable are not determinative of the present issue, unless it could be said that a place of safety is one wherein a person would come to no harm if he remained in it, and that it must not be measured by any consideration of competence or ability of one deposited in a given place to emerge therefrom without subjecting himself to hazards of the environs. If Smith takes the arm of Jones and leads him to the curb of a street, but on the sidewalk, although a street-car may be passing in the street, it might reasonably be asserted that Jones, an adult, was in a place of safety. But if one leaves a young child at the same spot, and in its immaturity it wanders into the street and is run over and injured by the street-car, could it then be reasonably said that the child had been put in a place of safety?" The court held: "These considerations impel us to the conclusion that it would be too narrow a construction to say that the safety of a place must be determined solely by whether or not one would be safe if he remained in it."

Since that case was decided, laws have been enacted concerning school bus safety, including speed limits, use of headlamps, visual signals when stopping, etc. These were in effect at the time of this incident, involving Marsha Greene. One of the most pertinent is OCGA § 40-6-164, which states the duty of a bus driver when discharging children: "After stopping to allow children to disembark from the bus, it shall be unlawful for the driver of the school bus to proceed until all children who need to cross the roadway have done so safely."

Therefore, it can be reasoned that "use" of the vehicle in question, a school bus, includes transportation of children to and from such school and the unloading of the school bus and that such unloading encompasses not only depositing them outside the bus but assuring that they reach a place of safety which, as in this case, may include crossing a street. Not only is this definition of "use" reasonable and rational but from the language of our laws in this regard it is clearly mandated. While the bus is standing guard with its lights flashing, its stop signals on and all visual signals functioning, the children disembarking therefrom are under its protection and such "use" does not conclude until the bus stops operating as a school bus in relation to that child. This does not mean that the "use" of the vehicle continues until the children reach home, but only until each one has crossed any immediate road and is in a place of safety in a direc-

tion towards their home.

Under the facts here, the trial judge did not err in granting the motions for summary judgment.

*Judgment affirmed. Carley, J., concurs. Birdsong, P. J., concurs in the judgment only.*

DECIDED MARCH 5, 1985 —
REHEARING DENIED MARCH 22, 1985 —

*Terry A. Dillard, Bryant H. Bower, Jr.,* for appellant.
*M. Theodore Solomon II, John R. Thigpen, Sr., Carroll Russell, J. Thomas Whelchel, John E. Bumgartner,* for appellees.