FINDINGS OF FACT AND CONCLUSIONS OF LAW

HOOD, District Judge:
The instant action is before the Court upon the parties’ submission of their arguments by brief for decision. Having been fully briefed, this matter is ripe for decision.
I. INTRODUCTION
This is an insurance contract dispute over which insurance policy covers an accident relating to a school bus accident where a child was hit by an oncoming car as the child was crossing the street after exiting a school bus. Both parties in the instant action insured the school board which owned and operated the bus. Each insurance company has denied coverage.
II. FINDINGS OF FACT
A. The Accident
The facts in this diversity insurance contract litigation are basically undisputed. On *836 September 15, 1988, Stephen Eric Coleman [Coleman], a nine-year-old student in the Pike County school system, was killed after being struck by a vehicle while he was crossing a highway after exiting the school bus. The school bus was owned and operated by the Pike County Board of Education [the Board] and driven by Dillard Taylor [Taylor], the Board’s agent or employee. Curt Coleman, the father of Stephan Eric Coleman and the administrator of his deceased son’s estate, filed a tort suit in the Pike Circuit Court along with Stephen Erie Coleman’s mother, Brenda Coleman. [Defendant’s exhibit 3]. The Colemans sued the Pike County Board of Education and its members, Dillard Taylor and Phamon Tackett, the driver of the vehicle which struck Coleman. [Defendant’s exhibits 3, 6, and 11].
State Farm defended the Board in the Pike County action, which resulted in judgment in favor of the Colemans. The following undisputed facts unfolded during the litigation of the tort claim. On September 15, 1988, Taylor was driving the Pike County school bus, delivering children on U.S. 460 near Shelbina in Pike County. Taylor saw Tackett’s truck approaching from the opposite direction but assumed that the truck would stop in response to the bus’s flashing yellow and amber lights. Coleman then exited the bus and went around to the front of the bus to cross the road. Tackett failed to yield to the stopped bus’s signals and struck Coleman as Coleman crossed the road in front of the bus. Coleman died as a result.
On the date of the accident, September 15, 1988, both the plaintiff and defendant herein insured the Pike County Board of Education. The plaintiff, State Farm Mutual Automobile Insurance Company [State Farm], provided automobile insurance coverage for the Board and its employees including the standard school bus endorsement. The Board, however, also had a “general liability insurance” policy with the defendant, Kentucky School Board Insurance Trust Co. [KSBIT]. The dispute in this action arises over which insurance policy provides coverage to the injuries sustained by Stephan Eric Coleman.
B. The Policies
On the date of the accident, the Pike County School Board had in effect an automobile liability insurance policy with State Farm [State Farm policy] pursuant to the Kentucky Motor Vehicle Reparations Act [KMVRA], K.R.S. § 304.39-010, et seq. which requires vehicle motor owners to maintain tort liability coverage.[1] [Defendant’s exhibit ¾.
The State Farm policy provided in relevant part:
We wiU
1. Pay damages which an insured becomes legally obligated to pay because of:
a. Bodily injury to others, and
b. Damage to or destruction of property including loss of its use,
caused by accident resulting from the ownership, maintenance or use of your car;
[[Image here]]
State Farm’s policy also contained the Kentucky “standard school bus endorsement”.[2]
*837 The defendant, KSBIT, also provided general liability coverage for various members of the Kentucky School Boards Association, including the Pike County Board of Education, on the date of Stephan Eric Coleman’s death. The KSBIT policy agreed to indemnify the Board for personal injury and property damages, subject to various definitions and exclusions. The policy provides in pertinent part:
This policy does not apply: ...
(k) to personal injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of (1) any automobile or aircraft owned or operated by or rented or loaned to any Insured, or (2) any other automobile or aircraft operated by any person in the course of his employment by any Insured. ...
[Defendant’s exhibit 1 (emphasis added)].
State Farm, although having defended the Board in the Pike Circuit Court tort action, now claims that the underlying accident causing Stephan Eric Coleman’s death was not covered by the policy it issued to the Pike County Board of Education. That is, State Farm argues that the accident did not “arise from the ownership, maintenance, or use” or the school bus. Naturally, KSBIT denies coverage as well. Hence, the issue presently before the Court is whether accident on September 15, 1988 involving the Pike County school bus, Stephen Eric Coleman and Pha-mon Tackett “arose from the ownership, maintenance or use” of the school bus.
III. CONCLUSIONS OF LAW
A. “Arising from the operation, maintenance, or use”
In this diversity action, Kentucky law governs the construction of the insurance polieies. Eades v. Union Railway, 396 F.2d 798, 799 (6th Cir.1968). The Sixth Circuit has determined that under Kentucky law “arising out of the use of’ in an automobile insurance policy are “broad, general, comprehensive terms meaning ‘originating from’, ‘having origin in’, ‘growing out of, or ‘flowing from’ ”. Insurance Company of North America v. Royal Indemnity, 429 F.2d 1014, 1017 (6th Cir.1970). The parties have agreed that only a causal connection between the injury and the use of the vehicle is required to come within the meaning of “arising out of the use of’. See id. at 1018. Further, while a finding of proximate causation is not required, id., the causal connection must be more than incidental. Kentucky Farm Bureau Mutual Insurance Co. v. Hall, 807 S.W.2d 954 (Ky.Ct.App.1991).
Kentucky courts, in situations involving vehicles other than school busses, have employed a liberal interpretation to the phrase “use of an automobile.” See State Farm Mutual Auto Insurance Co. v. Kentucky Farm Bureau Mutual Insurance Co., 671 S.W.2d 258 (Ky.Ct.App.1984) (holding that an insured who was attaching his car- to another with a chain was entitled to no-fault benefits for the injuries he suffered); Kentucky Farm Bureau Mutual Insurance Co. v. McKinney, 831 S.W.2d 164, 166 (Ky.1992) (joining with other “jurisdictions which employ expansive interpretations to provide uninsured motorist insurance coverage for persons who have been occupants of an insured vehicle” and holding that a driver who left her stalled vehicle to warn oncoming traffic and was hit by a car was “occupying” her vehicle at the time of the accident and therefore covered under the uninsured mo *838 torist provision of her insurance policy); See also Dodson v. Key, 508 S.W.2d 586 (Ky.1974); Kentucky Farm Bureau Mutual Insurance Co. v. Hall, 807 S.W.2d 954 (Ky.Ct.App.1991).
While the Kentucky courts have not determined whether facts like those in the instant action “arise from the operation, maintenance or use” of a school bus, other jurisdictions have so found under similar circumstances.[3] In Georgia Farm Bureau Mutual Insurance Co. v. Greene, 174 Ga.App. 120, 329 S.E.2d 204 (1985), a nine-year-old school girl was struck by an oncoming car when crossing the road after exiting the school bus. The school bus was still stopped and operating its flashing lights when the child was hit. The Georgia court, recognizing its previous adoption of a liberal definition of the word “use”, determined that the accident occurred from the “use” of the school bus.
“[U]se” of the vehicle in question, a school bus, includes transportation of children to and from such school and the unloading of the school bus and that such unloading encompasses not only depositing them outside the bus but assuring that they reach a place of safety which, as in this case, may include crossing a street.
Id. at 208. See also Cawthorn v. Waco Fire and Casualty Insurance Co., 183 Ga.App. 238, 358 S.E.2d 615 (1987) (holding that an accident which occurred as a child was crossing the street to board the bus arose from the use of a school bus). This Court believes that the Georgia court’s interpretation of the insurance policy was reasonable and based on sound policy. That is, until the child, exiting the school bus, reaches a place of safety across the road, the school bus is still in “use” in relation to that child.
Given Kentucky’s liberal interpretation of the phrase “arising from the operation, maintenance or use” of a vehicle Stephan Eric Coleman’s death was covered by the State Farm policy under Kentucky law. The undisputed facts show that the school bus was stopped with its flashing yellow and amber lights when Stephan was crossing the road in front of the bus and hit by the oncoming truck. Although Coleman was physically outside the confines of the bus, he had not yet reached a point of safety across the street. Undoubtedly, the purpose of the school bus’s flashing lights and the law requiring oncoming vehicles to stop while the bus is unloading is to allow students to safely cross the street or road upon exiting the bus. Had the bus not been stopped and waiting to ensure that the child made it safely across the street, the outcome may have been different. In this action, though, the bus was waiting with flashing lights and an extended stop sign, waiting for the child to reach the other side of the road safely. Therefore, the bus was still in “use” under the terms of the State Farm policy. Until Coleman reached *839 the other side of the street safely and while under the bus’s protection of flashing lights, the school bus had not stopped operating as a school bus in relation to Coleman. Hence, Coleman’s injuries were causally related to the use of the school bus and not merely incidental thereto. Therefore, under Kentucky law, the State Farm policy provides coverage under these circumstances.[4] This action should be accordingly dismissed in favor of the defendant.'
B.
As the plaintiffs complaint will be dismissed, it is unnecessary for the Court to consider the defendant’s argument that the plaintiff defended the state court action without reserving its rights, thereby forfeiting the right to bring the instant action.
IY. CONCLUSION
Accordingly, this action shall be, and the same hereby is, DISMISSED and STRICKEN FROM THE ACTIVE DOCKET.
IT IS SO ORDERED.

. The KMVRA requires that:
[E]very owner of a motor vehicle registered in this Commonwealth or operated in this Commonwealth by him or with his permission, shall continuously provide with respect to the motor vehicle while it is either present or registered in this Commonwealth ... security for payment of tort liabilities, arising from maintenance or use of the motor vehicle.
K.R.S. § 304.39-080(5). The KMVRA defines "use of a motor vehicle” as follows:
(6) "Use of a motor vehicle” means any utilization of the motor vehicle as a vehicle including occupying, entering into and alighting from it. It does not include (i) conduct within the course of a business or repairing, servicing, or otherwise maintaining motor vehicles unless the conduct occurs off the business premises, or (ii) conduct in the course of loading and unloading the vehicle unless the conduct occurs while occupying, entering into, or alighting from it.
K.R.S. § 304.39-020(6).

. The Kentucky "standard school bus endorsement” provides, in pertinent part:
It is hereby agreed that such insurance as is afforded by the policy for Bodily Injury Liability and for Property Damages Liability applies with respect to the automobile classified as "School Bus”, subject to the following provisions.
1. The insurance shall apply, if the automobile is of the bus or commercial type, to the Named Insured, and/or to the Board of Edu *837 cation in his or their individual or official capacity, and/or to the owner, and/or the operator or driver, and/or the substitute operator, and/or substitute driver, as insured; and, if the automobile is of the private passenger type, the definition of "Insured” agreement of the policy applies to the insurance under this endorsement in the same manner as though the auto-' mobile were classified as "Pleasure and Business”; and
2. The insurance shall apply, while the automobile is used as a "School Bus” or for "Pleasure and Business” as defined in the policy, but shall not apply to the use of said automobile for general delivery or any other passenger carrying purposes; and
3. "School Bus” use is defined as: (a) The transportation of school children, students and teachers to and from school, school games and school outings; (b) the incidental transportation of guests or guardians of school children in connection with any school activity; and (c) operation necessary and incidental to such transportation which has been authorized by the Board of Education or its administrative officer, the superintendent; ....

. In a recent unpublished opinion, the Sixth Circuit Court of Appeals reviewed Kentucky courts' interpretation of the phrase "arising from the operation, maintenance, or use” of an automobile in insurance contracts. Kentucky School Boards Insurance Trust v. State Farm Mutual Automobile Insurance Co., No. 92-6451, 1994 WL 112873, 1994 U.S.App. LEXIS 6676 (April 1, 1994). In Kentucky School Boards Insurance Trust, two insurance companies disputed liability coverage under policies similar to those in the present action based on the phrase "arising from the ownership, maintenance, or use” of the school bus. In that action, a school bus driver lived on the east side of Highway 25 in Laurel County, Kentucky. The decedent, Scotty Goodin, a first grader, lived on the west side of Highway 25. The school bus driver was permitted to drive the bus home and park it overnight nearby. In the winter months, the school bus driver routinely started up the bus around 6:30 a.m., turned on the heater, and returned to his home while the bus warmed. Several students, including Goo-din, often boarded the unattended bus before the driver began his route around 7:20 a.m. On one of these mornings, Goodin was crossing Highway 25 on his way to board the bus when he was struck by a car. He died a short time thereafter. Goodin’s mother brought a tort action against the Laurel County Board of Education seeking damages for Goodin’s death. KSBIT paid the entire settlement and then sought reimbursement from State Farm in federal court.
State Farm provided the school board with an automobile liability policy including the standard school bus endorsement. KSBIT also insured the school board under a general liability policy. The Court of Appeals, relying on the liberal interpretation by the Kentucky Courts of the phrase "arising from the operation, maintenance or use” and other jurisdictions' interpretations in similar circumstances, determined that the circumstances giving rise Scotty Goodin's death “arose from the operation, maintenance, or use" of the school bus, and was therefore covered by State Farm’s automobile liability policy.

. The Court notes that even under the more narrow interpretation of the phrase "arising from the use of" taken by Judge Batchelder, in her dissent in Kentucky School Boards Insurance Trust v. State Farm, supra note 3, the facts surrounding Coleman’s accident would give rise to coverage. Because Coleman was exiting the bus and crossing the street as the bus stood “guardian” over him he was under the "zone of protection" of the bus.