21 F.3d 428
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 KENTUCKY SCHOOL BOARDS INSURANCE TRUST, Plaintiff-Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee.
 No. 92-6451.
 United States Court of Appeals, Sixth Circuit.
 April 1, 1994.
 
 Before: MILBURN and BATCHELDER, Circuit Judges; and COHN, District Judge.*
 I.
 PER CURIAM.
 
 
 1
 This is an insurance coverage dispute. Appellant Kentucky School Board Insurance Trust (KSBIT) appeals the district court's decision in favor of appellee State Farm Mutual Automobile Insurance Company (State Farm) holding that KSBIT was not entitled to reimbursement from State Farm for the costs of a tort action settlement. The issue on appeal is whether the death of a student who was crossing the street to board a school bus and was hit by a car "arose from the use" of the school bus. The district court held that his death did not. We disagree.
 
 II.
 A.
 
 2
 Scotty Goodin, a first grader in the Laurel County School District, lived on the west side of Highway 25. His designated bus stop was also on the west side of Highway 25. His school bus driver lived on the east side of Highway 25. The school bus driver was permitted to drive the bus home and park it overnight nearby. In the winter months, the school bus driver routinely started up the bus around 6:30 a.m., turned on the heater, then returned to his home while the bus warmed up. Several students, including Scotty, often boarded the unattended bus. The bus driver boarded the bus at approximately 7:20 a.m. and began his route.
 
 
 3
 On the morning of January 17, 1989 Scotty was crossing Highway 25 on his way to board the bus when he was struck by a car. He died a short time later. The accident occurred approximately fifty to two hundred feet from the parked bus. Scotty's mother brought a tort action against the Board seeking damages for Scotty's death. The action settled for $175,000. KSBIT paid the entire settlement amount and the fees and expenses of the attorney it engaged to defend the action. It then sought reimbursement from State Farm. When State Farm refused to contribute, KSBIT filed an action against State Farm alleging that it was entitled to complete or partial reimbursement for the settlement amount and expenses incurred in defending the state court action.
 
 
 4
 The district court held that the State Farm policy did not cover the tort action because Scotty's death was not connected to the "use" of a school bus. It stated:
 
 
 5
 Even looking at the word "use" in the most broadest context, scope, or the most liberal ... I can't find coverage.
 
 
 6
 * * *
 
 
 7
 * * *
 
 
 8
 ... the "use" of the school bus is not even remotely connected to the death of Scotty Goodin. Scotty's death was the result of the misguided practice of allowing Scotty to cross the road, rather then [sp] requiring that he remain on the side at the designated pick-up point.
 
 
 9
 * * *
 
 
 10
 * * *
 
 B.
 
 11
 Kentucky law requires all motor vehicle owners to continuously provide security for payment of tort liability arising from the maintenance or use of the motor vehicle. K.R.S. Sec. 304.39-080(5).[1] "Use of a motor vehicle" is defined in K.R.S. 304.39-020(6) as:
 
 
 12
 ... any utilization of the motor vehicle as a vehicle including occupying, entering into and alighting from it. It does not include (i) conduct within the course of a business of repairing, servicing or otherwise maintaining motor vehicles unless the conduct occurs off the business premises or (ii) conduct in the course of loading and unloading the vehicle unless the conduct occurs while occupying, entering into, or alighting from it.
 
 
 13
 The Board provided the required security for its school buses in the form of insurance purchased from State Farm. The State Farm policy in effect at the time of the accident provided in Section 1:
 
 We will:
 
 14
 1. pay damages which an insured becomes legally liable to pay because of:
 
 
 15
 a. bodily injury to others
 
 
 16
 caused by accident resulting from the ownership, maintenance or use of your car; ...
 
 
 17
 The State Farm policy contained the Kentucky Standard School Bus Endorsement which provides in relevant part:
 
 
 18
 It is hereby agreed that such insurance as is afforded by the policy for Bodily Injury Liability and for Property Damage Liability applies with respect to the automobile classified as "School Bus", subject to the following provisions.
 
 
 19
 1. The insurance shall apply, if the automobile is of the bus or commercial type, to the Named Insured, and/or to the Board of Education in his or their individual or official capacity, and/or to the owner, and/or the operator or driver ...; and
 
 
 20
 2. The insurance shall apply, while the automobile is used as a "School Bus" or for "Pleasure and Business" as defined in the policy, but shall not apply to the use of said automobile for general delivery or any other passenger carrying purposes; and
 
 
 21
 3. "School Bus" use is defined as: (a) The transportation of school children, students, and teachers to and from school, school games and school outings; (b) the incidental transportation of guests or guardians of school children in connection with any school activity; and (c) operation necessary and incidental to such transportation which has been authorized by the Board of Education or its administrative officer, the superintendent; ...
 
 
 22
 The policy also contained an "other insurance" provision in which State Farm proclaimed it would be liable only for its share of damages. Its share is "the percent that the limit of liability of the policy bears to the total of all vehicle liability coverage applicable to the accident."
 
 
 23
 The Board purchased its general liability insurance policy from KSBIT. Under the policy in effect at the time of the accident, KSBIT agreed to indemnify the Board for personal injury and property damage subject to certain definitions and exclusions. Exclusion (k), the auto exclusion, provided that the policy did not apply to:
 
 
 24
 personal injury or property damage arising out of the ownership, operation, use loading or unloading of (1) any automobile or aircraft owned or operated or rented or loaned to any insured; or (2) any other automobile or aircraft operated by any person in the course of his employment by any insured; ...
 
 
 25
 The KSBIT policy also contained an "other insurance" clause which provided:
 
 
 26
 If collectible insurance with any insurer is available to the Insured covering a loss also covered hereunder, the insurance hereunder shall be in excess of, and not contribute with, such other insurance.
 
 III.
 
 27
 The Court reviews a district court's determination of state law de novo. Salve Regina College v. Russell, 499 U.S. 252 (1991). A district court's interpretation of an insurance contract is reviewed de novo as the interpretation necessarily involves determinations of state law. E.g., FDIC v. Aetna Casualty and Surety Co., 903 F.2d 1073, 1077 (6th Cir.1990). The Court reviews a district court's findings of fact only for clear error. Fed.R.Civ.P. 52(a).
 
 A.
 
 28
 Under Kentucky law, an insurance contract, like any other voluntary agreement, must be construed according to its true character and purpose, and in accordance with the intent of the parties. Kentucky Water Serv. Co. v. Selective Ins. Co., 406 S.W.2d 385 (Ky1966). Any ambiguity in an insurance contract should be liberally construed and resolved in favor of coverage. E.g. Kentucky Farm Bureau Mut. Ins. Co. v. McKinney, 831 S.W.2d 164 (Ky1992).
 
 
 29
 The question here is whether Scotty's death arose from the use of the school bus. "Arising out of the use of" in an automobile insurance policy are "broad, general, comprehensive terms meaning 'originating from', 'having origin in', 'growing out of', or 'flowing from' ". Insurance Company of North America v. Royal Indemnity, 429 F.2d 1014, 1017 (6th Cir.1970). Only a causal connection between the injury and the use of the vehicle need be shown to come within the meaning of "arising out of the use of". Id. at 1018. While a finding of proximate causation is not required, id., the causal connection must be more than incidental. Kentucky Farm Bureau Mutual Insurance Co. v. Hall, 807 S.W.2d 954, 956 (Ky.App.1991).[2]
 
 
 30
 Given the unique circumstances associated with Scotty's death, it is not surprising that, after careful review, the Court has not been able to locate a Kentucky case on all fours with this one. However, cases from other jurisdictions, although not identical, are instructive. In Georgia Farm Bureau Mutual Insurance Company v. Greene, 329 S.E.2d 204 (Ga.App.1985) the Georgia court was required to decide whether an accident, in which a school child was struck by a car while crossing a highway after leaving a bus, "arose out of the use of" the school bus. Georgia courts adopted a liberal definition of the word "use", the same definition used by the Kentucky courts--"[t]he question to be answered is whether the injury 'originated from', 'had its origin in', 'grew out of', or 'flowed from' the use of the vehicle. Id. at 205 (quoting Southeastern Insurance company v. Stevens, 236 S.E.2d 550 (1977)). The Georgia court held that the school district's automobile liability insurance policy covered the accident, reasoning that use of the school bus included transporting the children, unloading the bus, and "that such unloading encompasses not only depositing them [the students] outside the bus but assuring that they reach a place of safety which ... may include crossing a street." Greene, 329 S.E.2d at 208. A later Georgia case held that an accident that occurs as a child was crossing the street to board a bus arises from the use of a school bus. Cawthon v. Waco Fire and Casualty Insurance Co., 358 S.E.2d 615 (Ga.App.1987).
 
 
 31
 A Pennsylvania court also utilized a similar construction of injury "arising out of" holding that it means "causally connected with, not proximately caused by" and that "but for causation is enough". State Automobile Insurance Association v. Kuhfahl, 527 A.2d 1039, 1042 (Pa.Super.1987). In Kuhfahl, a child was being driven home from school by another parent. The child exited the car, crossed the street, and was struck by an oncoming car. The Kuhfahl court held that a nexus existed between the child's injuries and the use of the automobile and ordered the auto insurance provider to defend the tort action.
 
 
 32
 Kentucky courts, in situations involving vehicles other than a school bus, also employ a liberal standard of the phrase "use of an automobile." Where an insured was attaching his car to another with a chain, the Kentucky Court of Appeals held that the insured was entitled to no-fault benefits for the injuries he suffered in an accident occurring during this use. State Farm Mutual Auto Insurance Co. v. Kentucky Farm Bureau Mutual Insurance Co., 671 S.W.2d 258 (Ky.App.1984). In Kentucky Farm Bureau Mutual Insurance Co. v. McKinney, 831 S.W.2d 164 (Ky.1992), the Kentucky Supreme Court held that a driver who left her stalled vehicle to warn oncoming traffic and was hit by a car was "occupying" her vehicle at the time of the accident and was covered under the uninsured motorist provision of her insurance policy.[3]
 
 B.
 
 33
 The Court is satisfied that Scotty's death arose from the use of the school bus and as such is within the scope of the State Farm policy. The open heated school bus created the risk that students would cross the highway and board the bus. Scotty's bus driver was aware that Scotty and others were crossing the highway and boarding the unattended bus. This practice was a "but for" cause of Scotty's death--but for the bus driver's allowing the school children to board the bus while it was warming up, Scotty would have used his appointed bus stop on the same side of the road and would not have been crossing the highway to board the bus. Scotty's death was more than incidentally connected with the early boarding procedure.
 
 
 34
 The Court is aware that the Minnesota Supreme Court, in deciding a case in which a young girl ran across a busy highway to reach her bus stop and was struck by a passing car, held that there was no loading of the bus, and therefore, the accident did not arise from the use of the bus. Eden Prairie Independent School District v. Auto-Owners Ins. Co., 279 N.W.2d 358 (Minn.1979). The Minnesota Supreme Court held that the loading process is commenced by the school bus driver when the driver activates the amber warning lights as the bus stop is approached. Since the child crossed the street prior to the activation of the warning lights, when the bus was approximately 800 feet away, the Court found that the bus was not loading.[4]
 
 
 35
 Minnesota views the question of loading as requiring some action on the part of the bus driver. Even if the Court adopted the Minnesota view, here there was action on the part of the bus driver. The bus driver's starting of the bus and turning on the heater served as a signal to Scotty and the other children that they could begin to board the bus. The heated bus was not simply a warming hut for children: rather the loading process commenced at the time the bus driver started the bus and turned on its heater. Even under the Minnesota view, Scotty's death happened during the loading process.[5]
 
 IV.
 
 36
 For the reasons stated above, the judgment of the district court is REVERSED.
 
 
 37
 BATCHELDER, Circuit Judge, dissenting.
 
 
 38
 Because I believe that the majority has given too expansive a construction to the term "arising out of the use of," I must respectfully dissent.
 
 
 39
 I do not take issue with the majority's assertion that Kentucky employs a liberal definition of the word "use." I do believe, however, that even this liberal definition cannot be stretched to encompass the facts of this case. The majority relies heavily on two Kentucky cases in support of the contention that Kentucky courts employ a liberal standard in interpreting the phrase "use of an automobile." See State Farm Mut. Auto. Ins. Co. v. Kentucky Farm Bureau Mut. Ins. Co., 671 S.W.2d 258, 259 (Ky.Ct.App.1984) (court held that person struck by vehicle while out of his own disabled vehicle attaching a tow chain was making use of his own vehicle within the meaning of the KMVRA); Kentucky Farm Bureau Mut. Ins. Co. v. McKinney, 831 S.W.2d 164, 166 (Ky.1992) (Kentucky Supreme Court held that decedent who had left stalled vehicle to warn oncoming motorists and who was 130 to 200 feet away from her vehicle when struck by another vehicle was "occupier" of her vehicle for purposes of the KMVRA).
 
 
 40
 While both State Farm and McKinney do indicate that Kentucky employs a very broad definition of the word "use" in relation to a motor vehicle, there is nothing in either of those cases which contemplates the extension of "use" to Scotty Goodin's connection to the school bus in this case. In State Farm, the decedent was attempting to connect his vehicle to another vehicle, "[h]e was utilizing his vehicle in trying to get it to a service station for repairs." State Farm, 671 S.W.2d at 259. In McKinney, the court held: "We now join with other jurisdictions which employ expansive interpretations to provide uninsured motorist insurance coverage for persons who have been occupants of an insured vehicle." McKinney, 831 S.W.2d at 168 (emphasis added). But in the case before us, Scotty Goodin was not utilizing the school bus, and no one argues that he was an occupant on the morning of his death. I am convinced that the Kentucky courts never intended the authority of State Farm and McKinney to be stretched far enough to cover a situation such as Scotty's accident.
 
 
 41
 Applying this overly inclusive definition of "use" in this case, the majority looks to cases from the Georgia state courts, which, the majority contends, apply a similarly broad definition of use. Upon closer analysis, however, it appears very unlikely that Georgia courts would interpret their definition of use as broadly as has this Court.
 
 
 42
 In Georgia Farm Bureau Mut. Ins. Co. v. Greene, 329 S.E.2d 204 (Ga.App.1985), the Georgia Appeals Court decided that an accident, in which a school child was struck and injured while crossing a highway after leaving a bus, "arose out of the use of" the school bus. As the majority correctly points out, the Greene court held that the use of a school bus includes transporting the children and unloading the bus. The majority quotes the following language from the Greene opinion concerning unloading, "that such unloading encompasses not only depositing them [the students] outside the bus but assuring that they reach a place of safety which ... may include crossing a street." Id. at 208. The majority fails, however, to call attention to the language one sentence later in the same paragraph:
 
 
 43
 While the bus is standing guard with its lights flashing, its stop signals on and all visual signals functioning, the children disembarking therefrom are under its protection and such "use" does not conclude until the bus stops operating as a school bus in relation to that child. This does not mean that the "use" of the vehicle continues until the children reach home, but only until each one has crossed any immediate road and is in a place of safety in a direction towards their home.
 
 
 44
 Id. at 208 (emphasis added). This additional language modifies and narrows the language quoted in isolation by the majority. The school bus is only in use when it stands as a "guardian," protecting the children with its lights and stop signals. In contradistinction was the school bus on the ill fated morning of Scotty Goodin's death. The bus was turned on, but there were no lights, no stop signals, the bus was in no way acting as a "guardian" protecting the children. Additionally, even if the bus's lights had been on, it is questionable whether this would have been sufficient to protect a child crossing 25W (the road on which Scotty was killed). The bus driver, Joe Leddington, testified that his "driveway is approximately between seven hundred and eight hundred feet parallel with 25W." And, in order to reach his driveway, there is "an embankment sort of that you have to get up to get to the highway." There is no evidence in the record that the bus, parked at the end of Joe Leddington's several hundred foot "driveway," was even visible from 25W. As a result, even if the lights had been on, if this fact was not visible from 25W then the children were not even arguably under the protection of the bus and it unquestionably was not in use.
 
 
 45
 The majority also cites a later Georgia case, Cawthon v. Waco Fire and Casualty Ins. Co., 358 S.E.2d 615 (Ga.App.1987), which stands for the proposition that an accident that occurs as a child crosses the street to board a bus arises out of the use of a school bus. Citing Greene, supra, the Georgia court stated:
 
 
 46
 that the loading of school children as well as the unloading thereof is included in the "use" of a school bus. A child crossing a road while a school bus is standing guard with its lights flashing, its stop signals activated and all visual signals functioning is under the protection of the school bus and any injuries arising during this phase of operation fall within the purview of the policy....
 
 
 47
 Cawthon, 358 S.E.2d at 241. Using the identical language found in Greene, the Cawthon court made it unmistakably clear that children not yet or no longer on the bus are using it only if they are within the protection of its flashing lights and activated signals. Again, it is uncontested that the bus which Scotty Goodin boarded, although running, had no lights flashing and no signals activated; the bus was in no way "standing guard." Looked at in context, the rationale of Greene and Cawthon cannot support a finding that the school bus Scotty Goodin was to board was in "use" as a school bus.
 
 
 48
 The real problem with the majority's position is that it gives no realistic and objective criteria by which to determine if a vehicle is in use. The majority concludes that, "the open heated school bus created the risk that students would cross the highway and board the bus.... This practice was the "but for" cause of Scotty's death...." Using this reasoning, any injury which occurs while a child is in any way involved in getting to, or from, a school vehicle, arises out of the "use" of that vehicle; how quickly this standard can be reduced to the absurd is obvious and needs no illustration.
 
 
 49
 While the majority purports to utilize a Kentucky definition of "use" which is the "same definition" used by the Georgia court, its interpretation of "use" is clearly broader than that adopted by the Georgia courts. The court in Greene held that use of a school vehicle does not continue until the children reach home, "but only until each one has crossed any immediate road and is in a place of safety in a direction towards their home." Greene, 329 S.E.2d at 208. Under the majority's definition, anything which happens to a child after he gets off a school vehicle arises out of the use of that vehicle; because, "but for" his having been on the school vehicle he would not have been in a position to be injured.
 
 
 50
 The approach taken by the Greene, supra, and Cawthon, supra, courts is logical and workable. So long as a child, getting on or off a bus, is within the "zone of protection" created by the safety devices on a school bus, required by law for the very purpose of protecting children, any injury to the child "arises out of the use of" the bus. But, in a case such as the one before us now, where there were no lights, no signs, and no zone of protection, the accident does not arise out of the use of the bus.
 
 
 51
 Therefore, I would hold that the district court be AFFIRMED.
 
 
 
 *
 Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The Kentucky Motor Vehicle Reparations Act, K.R.S. Sec. 304.39-080(5), provides in relevant part:
 ... [E]very owner of a motor vehicle registered in this Commonwealth or operated in this Commonwealth by him or with his permission, shall continuously provide with respect to the motor vehicle while it is either present or registered in this Commonwealth ... security for payment of tort liabilities, arising from maintenance or use of the motor vehicle.
 
 
 [2]
 See also Payne v. Southern Guarantee Insurance Company, 282 S.E.2d 711 (Ga.App.1981) (almost any causal connection or relationship will do)
 
 
 [3]
 See also, Dodson v. Key, 508 S.W.2d 586 (Ky.1974) (Employees unloaded sheetrock from a truck covered under an automobile policy covering loading and unloading. The sheetrock fell on a customer's daughter the next day. The Kentucky court held the injuries arose from unloading of the truck and therefore the injury was covered by the policy); Kentucky Farm Bureau Mutual Insurance Co. v. Hall, 807 S.W.2d 954 (Ky.App.1991) (driver struck in eye by a rock thrown from a lawn mower being operated near the street arose from the use of a motor vehicle
 
 
 [4]
 In Minnesota, proper procedure requires the bus driver to activate the warning lights at least 100 feet before stopping at the bus stop
 
 
 [5]
 The dissent takes the position that "arises out of the use of" the school bus encompasses only those situations in which a child is "getting on or off a school bus and is within the 'zone of protection' created by the safety devices on a school bus ..." and that the Georgia cases support that position. Such a position takes a too narrow view of when the loading process begins. The Georgia cases suggest that the school bus must give public notice of loading in order for the loading process to officially begin. We are satisfied that the loading process here began at the time the school bus driver started the motor of the bus, disembarked, and left the door open with the knowledge and expectation that Scotty and other school children would board the bus and wait for him to return to begin the route