73979. CAWTHON et al. v. WACO FIRE & CASUALTY INSURANCE COMPANY.
73980. BALDWIN COUNTY BOARD OF EDUCATION et al. v. WACO FIRE & CASUALTY INSURANCE COMPANY.
(358 SE2d 615)

SOGNIER, Judge.
Julius Jerome Cawthon and Josephine Cawthon brought suit against the Baldwin County Board of Education (Board), its members

both individually and in their official capacities, the Baldwin County School District and Margie Humphries, bus driver, for the wrongful death of their minor child, Robert. Waco Fire & Casualty Insurance Company, the issuer of the business automobile liability policy to the Board, filed an action seeking a declaration of its obligations under that policy in regard to the wrongful death suit. The trial court granted summary judgment in favor of Waco on its motion contending it was not obligated to provide coverage, to defend or to indemnify any defendant in the wrongful death suit. The appeals by the Cawthons and by the Board and other defendants in the wrongful death suit are consolidated in this opinion.

Robert Cawthon, age 10, was struck and killed as he was crossing a heavily-trafficked highway in order to get to his bus stop. The evidence shows that Robert was serving as look-out for the approach of the bus and that, upon espying the bus, he first returned to the building where his two sisters were waiting, informed them the bus was coming, then proceeded ahead of them to the highway whereupon he was struck by an on-coming automobile while crossing to the bus stop. The evidence conflicts whether the school bus was approaching Robert's stop at the time of the accident or was still at the previous stop. However, it is uncontroverted that the prior stop was less than one-tenth of a mile away and that the bus was clearly visible to Robert at the time of the accident.

Further controversy exists in the evidence regarding Robert's action in crossing the highway prior to the arrival of the school bus. Up until four to six weeks prior to Robert's death, the Cawthon children had always waited for the school bus to arrive before crossing the highway under the protection and supervision of the school bus and driver. The Cawthon children's behavior changed at this time due to an incident in which Eunesia, Robert's older sister, was so late that the school bus had to leave her behind. Humphries, the bus driver, stated in her deposition that she told her transportation supervisor about the incident and about Eunesia's recurring tardiness the same day she had to leave Eunesia behind, that the supervisor told her complaints had been received about the school bus delaying traffic on the highway, and that he told her to leave Eunesia if the child was not on time. Humphries stated that the following school day she told Eunesia (in a lecture apparently overheard by all the occupants of the school bus) people had complained about the school bus holding up traffic and from then on Eunesia would have to be outside waiting on the bus with the other children or she would be left. Humphries stated she did not discuss with Eunesia on which side of the highway she should be waiting or whether by "other children" she meant Robert and the younger Cawthon child or the "other children" who also boarded at that stop, all of whom waited at the bus stop itself because

they did not need to cross the highway. Robert's sisters and another student who rode the school bus at that time testified by deposition that Humphries told them explicitly that if the children were not waiting at the bus stop when the school bus arrived, they would be left behind. It is uncontroverted, however, that in the four to six-week period following this incident, Humphries repeatedly arrived at the bus stop to find the Cawthon children already across the highway at the stop. Humphries testified that during this period, she did not discuss with the Cawthon children on which side of the highway they should be waiting, that she did not know how the children were crossing the highway (supervised or otherwise) and that she made no inquiry of the children in that regard.

Appellants contend the trial court erred by granting summary judgment to appellee because questions of fact exist whether liability for Robert Cawthon's death comes within the provision of the policy issued by appellee providing coverage for "bodily injury caused by an accident and resulting from the ownership, maintenance or use of a covered auto." In *Georgia Farm Bureau Mut. Ins. Co. v. Greene*, 174 Ga. App. 120 (329 SE2d 204) (1985), in which a child was injured crossing an adjacent street moments after alighting from the school bus, we held "it can be reasoned that 'use' of the vehicle in question, a school bus, includes transportation of children to and from such school and the unloading of the school bus and that such unloading encompasses not only depositing them outside the bus but assuring that they reach a place of safety which, as in this case, may include crossing a street." Id. at 124. Although the court in *Greene* found this definition of "use" to be reasonable and rational, it is to be noted that *Greene* involved the unloading of a school bus and that there are specific statutory regulations in regard to children disembarking from school buses. OCGA § 40-6-164. Although *Hill v. McClure*, 171 Ga. App. 588 (320 SE2d 562) (1984), bears some factual similarities to the case sub judice, no discussion of loading or "use" of a school bus was considered necessary to decide that opinion and thus it is distinguishable on the law applied. Nor do we find general carrier case law to be helpful here because opinions discussing injuries incurred while boarding various types of motor carriers dwell on the duty of care owed and the injured party's status as passenger rather than on " '[w]hether or not an injury arose from the "use" of a motor vehicle within the contemplation of a liability policy. . . .' " *Greene*, supra at 122. See, e.g., *Atlanta Northern R. Co. v. Brown*, 159 Ga. 212 (125 SE 465) (1924); *McKay v. City of Atlanta*, 80 Ga. App. 797 (57 SE2d 432) (1950).

Insofar as Georgia law is concerned, we have been unable to find, nor have counsel cited us to any opinions discussing what constitutes the loading of a school bus under a provision of a policy of insurance

such as the one sub judice. Although the factual dissimilarities in *Greene*, supra, have been noted, it can be discerned from the language employed therein — as indeed it is virtually conceded by the parties — that the loading of school children as well as the unloading thereof is included in the "use" of a school bus. A child crossing a road while a school bus is standing guard with its lights flashing, its stop signals activated and all visual signals functioning is under the protection of the school bus and any injuries arising during this phase of operation fall within the purview of the policy and statutory language of OCGA § 33-24-51. See *Greene*, supra at 124. Appellee would have this court follow the holding in *Eden Prairie Independent School Dist. v. Auto-Owners Ins. Co.*, 279 NW2d 358 (SC Minn. 1979), in which that court, looking to the Minnesota statutes regarding the loading of school buses, stated that "the loading process commences when the driver properly turns on the amber prewarning signals as he approaches the boarding point." Id. at 360. That court rejected defining loading from the standpoint of the school child, holding instead that the school bus driver initiates the loading procedure.

We hold that independent, voluntary actions taken by a school child cannot, alone, initiate the loading procedure and that typically the process of loading a school bus is initiated and controlled directly by the bus driver and indirectly by the regulations and policies regarding the loading of school buses issued by the driver's supervisors. It is not necessary, however, to decide when a bus driver normally initiates the loading procedure or at what point in time control of school children intending to board a school bus passes to the bus driver so as to constitute the process of loading. "Use" of a school bus insofar as the loading process is concerned depends, as do most cases involving the "use" of a vehicle, on the factual context of each case. See *Hartford Accident &c. Co. v. Booker*, 140 Ga. App. 3, 7 (230 SE2d 70) (1976). Under the facts of this case, construed in a light most favorable to appellants as nonmovants, see generally *Mallard v. Jenkins*, 179 Ga. App. 582 (347 SE2d 339) (1986), a question of fact exists whether Humphries, the bus driver, either explicitly ordered the Cawthon children to cross the highway prior to the arrival of the school bus or inadvertently instructed Eunesia Cawthon in such a manner that the Cawthon children reasonably believed that such was Humphries' order. If that question is resolved in favor of the contention that Robert was acting pursuant to orders from the bus driver, and if it is found that Robert was acting reasonably pursuant to those orders and within the purview of those orders when he attempted to cross the highway as the school bus was allegedly approaching his stop at a distance less than 528 feet away, then the process of loading the school bus may be considered as having been extended by the bus

driver to include Robert's actions, thus encompassing liability for Robert's death within the coverage provided by appellee. However, should it be resolved that Robert was either not acting pursuant to prior crossing instructions from the bus driver or was not acting reasonably within the purview of those orders, then Robert's death would not have occurred within the normal process of loading. Thus, we must reverse the trial court's order granting summary judgment in favor of appellee in view of these questions of fact to be determined. We note that nothing in this opinion addresses the applicability of any general liability insurance possessed by the defendant-appellees in the wrongful death suit in that that question is not properly before this court at this moment.

*Judgments reversed. McMurray, P. J., and Beasley, J., concur.*

DECIDED MAY 21, 1987 —
REHEARING DENIED JUNE 8, 1987 —

*E. Angela Emerson, David N. Rainwater*, for appellants (case no. 73979).

*Milton F. Gardner, Jr., Richard Gardner*, for appellants (case no. 73980).

*James M. Poe, Debra L. Mixon*, for appellee.