S96G1005. ROBERTS et al. v. BURKE COUNTY SCHOOL
DISTRICT.
(482 SE2d 283)

HINES, Justice.

We granted certiorari to the Court of Appeals to consider its decision in *Burke County School District v. Roberts*, 220 Ga. App. 510 (469 SE2d 529) (1996) that the Roberts' son's death arose from the "use" of the school bus, thereby precluding certain insurance coverage. For the reasons which follow, we reverse that determination.

In 1986, five-year-old Rodriguez Roberts was a kindergarten student in the Burke County schools, and he rode the school district's buses to and from school. The bus picked him up across from his home but dropped him off after school about a half mile away. He then walked the rest of the way home with some older children. The pick-up spot was on the approved bus route, but the drop-off site was not. The school district permitted the irregular drop-off at the request of some parents who wanted the children to arrive home earlier. However, using the unauthorized location required that after the children disembarked they walk along a heavily traveled road with no crosswalks and a 55 mph speed limit.[1] The evidence was disputed as to whether or not Rodriguez' parents authorized the bus driver to drop off the boy at the alternate spot, but the bus driver told the principal that Rodriguez would be let out there. On the day in question, Rodriguez was let out at the alternate location and was walking home with other children when suddenly he ran across the road toward his house. He was struck by a van and killed. There was evidence that by the time of the fatal injury, the boy had walked about four-tenths of a mile in the direction of his home and the school bus had traveled approximately two miles away from the site where the child had been discharged.

The Roberts filed a wrongful death action against the school bus driver, members of the Burke County Board of Education, and the county superintendent of schools. They amended the complaint to add the school district as a party defendant and to dismiss the superintendent and the school board members. The school bus driver was also later dismissed from the suit.

The school district apparently was insured under two policies. One was an automobile liability insurance policy issued by Unisun Insurance Company (Unisun) which ostensibly provided coverage for

---

[1] The lower court found as fact that the route approved by the State Board of Education which was adopted by the Burke County Board of Education required that the boy be discharged at his residence.

losses arising out of the use and operation of the district's school buses and contained a $500,000 liability limit for bodily injury. The other was a comprehensive liability policy issued by Illinois Insurance Exchange (IIE) with coverage for losses up to $1,000,000, but which contained an exclusion of coverage for injury or damages arising from the ownership, maintenance, operation, use, or loading or unloading of a vehicle.

The case was decided in a bench trial. The trial court found the school district liable for its negligent acts and omissions in the selection and implementation of the alternate unsafe bus route and in failing to properly train and supervise its school bus driver, who could neither read nor write. The court concluded that the manner in which the school bus driver "maintained, operated or used" the school bus at the time of the incident was not the proximate cause of the boy's death. Moreover, due to the distance the boy traveled after exiting the school bus and the distance between the boy and the bus at the time of the injury, the boy's injuries could not be said to have arisen from the "use" of the school bus within the contemplation of either insurance policy. Consequently, it further concluded that the IIE policy rather than the Unisun policy provided coverage, and that there was a waiver of sovereign immunity up to the limits of the liability coverage. It issued a judgment in favor of the Roberts for $1,000,000.[2]

The Court of Appeals reversed the judgment of the trial court and remanded the case with direction that the trial court enter an involuntary dismissal under OCGA § 9-11-41 (b) in favor of the school district. It did so after concluding that as the dropping off of the child was unquestionably an act which arose " 'out of the ownership, maintenance, operation, use' " of the school bus, the IIE policy exclusion applied, and thus, the Roberts failed to establish a waiver of sovereign immunity.[3] The Court of Appeals reasoned that the findings of fact supporting the imposition of liability against the school district, i.e., dropping off Rodriguez Roberts at an unauthorized location and requiring him to walk to his home along a hazardous road, are inescapably bound to the "use" of the school bus, for if the bus driver had not dropped off the child at the unapproved stop, there would be no valid claim against the school district. It went on to explain, "[i]n this sense, for the injury or damage to arise from the

---

[2] The initial award was for $1,572,985.03 based on the full value of the boy's life at the time of his death, but was reduced to a judgment for the policy limit.

[3] The Court of Appeals determined that because the Roberts did not file a cross-appeal contesting the trial court's ruling in regard to the Unisun policy, it did not have jurisdiction to consider the applicability of the Unisun policy.

use of the school bus does not mean that the injury or damage was directly or proximately caused by the school bus or that the school bus exerted any physical force on the immediate cause of the injury . . . any causal connection or relationship will suffice."[4] We find that such reasoning in the context of this case strains both logic and the law.

The term "use" of a school bus in a situation such as this, that is, in considering the scope of insurance policy provisions is dependent to a great extent on the circumstances of the case. *Cawthon v. Waco Fire &c. Ins. Co.*, 183 Ga. App. 238, 241 (358 SE2d 615) (1987). This is necessarily so because an exact or "bright-line" definition of the term is "elusive, and is not capable of a definition which will leave everyone 'comfortable.' " *Hartford Accident &c. Co. v. Booker*, 140 Ga. App. 3, 4 (2) (230 SE2d 70) (1976). Certainly "use" can reach beyond actual physical contact. The Court of Appeals recognized this in *Ga. Farm Bureau Mut. Ins. Co. v. Greene*, 174 Ga. App. 120 (329 SE2d 204) (1985), a case in which a child was injured attempting to cross an adjacent street just moments after disembarking from the school bus. In that case, the court reasoned that the "use" of the school bus encompassed unloading the children and assuring that they reach a place of safety which might include crossing a street. See OCGA § 40-6-164. But to use the language of the case, there the school bus was, in essence, "standing guard with its lights flashing, its stop signals on and all visual signals functioning" with the disembarking children "under its protection." Id. at 124. The bus was still being "utilized" in the plain and ordinary sense of the word. That is, it was still operating as a school bus in relation to the child. This comports with the realization that in this type of situation, the idea of "use" does not embrace "remoteness." *Hartford Accident &c. Co. v. Booker*, supra at 4 (2).

In this case, the Court of Appeals was critical of what it construed as the trial court's focus on the physical distance of the school bus from the injury site rather than on the conduct of the school district which placed Rodriguez Roberts in a position of danger. While neither physical nor temporal proximity is, in and of itself, determinative of the question of remoteness, it is most certainly a factor in the equation. So too is the nature of the conduct which caused the situation of jeopardy. Here, the trial court concluded that the acts of

---

[4] *Abercrombie v. Ga. Farm &c. Co.*, 216 Ga. App. 602 (454 SE2d 813) (1995) and *Southeastern Fidelity Ins. Co. v. Stevens*, 142 Ga. App. 562 (236 SE2d 550) (1977) cited by the Court of Appeals in support of the view of the minimal nature of the required causal relationship involved the shootings of passengers in vehicles.

negligence were the school district's selection and implementation of the unsafe route and its training and supervision of the bus driver. Such conduct is removed from the actual operation of the school bus.

The Court of Appeals also based its expansive definition of "use" on what it viewed as the trial court's factual findings about the dangerousness and hazardousness of the location in which Rodriguez Roberts was placed. In other words, the court found that the boy's use of the school bus had not ended at the time he was struck even if the school bus was miles away because the boy had not reached a "place of safety." See *Greene,* supra at 124. Such view distorts the findings of the trial court and the concept of a "place of safety." While unquestionably the trial court determined that the alternate route was perilous in regard to the five-year-old, it did not make an express finding that there was no point of safety in the child's four-tenths-of-a-mile journey. In fact, the very opposite is implicit in the trial court's conclusion that the boy's injury and death did not arise from the use or operation of the school bus. But even more importantly, a "place of safety" in this type of situation cannot be defined solely by whether or not the individual would be safe if he remained in the place, for it is pragmatically impossible to guarantee a place where one can come to no harm. The illogic of such an approach is stark in a case such as this which involves a young child, for it can well be argued that with a child of tender years there would not be a point of safety, following discharge from a school bus, until the child was inside his home and in the presence of a caregiver. See *Gazaway v. Nicholson,* 61 Ga. App. 3, 10-11 (5 SE2d 391) (1939), aff'd *Gazaway v. Nicholson,* 190 Ga. 345 (9 SE2d 154) (1940).

Under the facts of this case, the trial court correctly concluded that the boy's injury and death could not be said to have arisen from the "use" of the school bus within the contemplation of the IIE insurance policy.[5] Therefore, the Court of Appeals determination to the contrary does not stand.

The case is remanded to the Court of Appeals for action consistent with this opinion.

*Judgment reversed and case remanded with direction. All the Justices concur, except Fletcher, P. J., who dissents.*

FLETCHER, Presiding Justice, dissenting.

The Court of Appeals has consistently applied a liberal definition

---

[5] No determination in this regard is made as to the Unisun policy because that question is not before us.

of "use" in construing insurance policy provisions.[6] Application of this definition in this case demands a finding that there is a causal connection or relationship between the use of the school district's bus and Roberts' death. Because the death arose out of the use of the bus, the injury is excluded from coverage under the IIE policy.

Additionally, as the majority acknowledges, the meaning of the term "use" is "dependent to a great extent on the circumstances of the case" and a "bright-line" definition is "elusive." The majority offers no clarity to the bench and bar, but simply reviews the evidence and reaches a contrary result. Therefore, this case fails to meet this Court's standard for granting certiorari.

For these reasons, I respectfully dissent.

DECIDED MARCH 3, 1997 —
RECONSIDERATION DENIED APRIL 3, 1997.

*Davis, Gregory, Christy & Forehand, Hardy Gregory, Jr., Jones & Smith, Bobby T. Jones, Julian B. Smith, Jr., Robert S. Lanier, Jr., Grady K. Reddick,* for appellants.

*Drew, Eckl & Farnham, Theodore Freeman, Nancy F. Rigby,* for appellee.

---

[6] See *Burke County School District v. Roberts*, 220 Ga. App. 510, 512 (469 SE2d 529) (1996).