A00A1131. BROCK et al. v. SUMTER COUNTY SCHOOL BOARD et al.
(542 SE2d 547)

POPE, Presiding Judge.

Wendy Brock and Jimmy Yoemans (hereinafter "Brock") sued the Sumter County School Board and several individual employees of the County after their seven-year-old daughter, Elizabeth, was killed in an unfortunate accident while she was waiting for the morning school bus. The Sumter County School District was substituted as a

---

[4] This statute has been revised with respect to actions filed after July 1, 1999.

party in place of the school board. The trial court granted summary judgment for the school district on the ground of sovereign immunity and granted summary judgment for the individual defendants. This appeal raises the familiar questions of whether the school district waived its sovereign immunity by purchasing motor vehicle liability insurance and whether certain duties of the school district employees were ministerial, meaning that their actions were not protected by official immunity.

Construed in favor of Brock, the facts show that the family lived in a mobile home park located on a dirt, privately owned driveway that intersects Brady Road, a paved, county-owned roadway. Seven-year-old, second grader Elizabeth and the other children were supposed to wait for the bus ten to twenty feet from Brady Road. Only when the bus arrived were the children to cross Brady Road in order to board the bus. The children were instructed to arrive at the bus stop no earlier than five minutes before the scheduled pickup time of 6:55 a.m.

On the morning of March 25, 1997, Elizabeth made the ten-minute walk to the bus stop by herself as usual. She arrived at the bus stop at least four or five minutes before 6:50 a.m. At the same time, Michael Trussell was driving to work on Brady Road. As he rounded a turn he saw children on both sides of the road where the dirt driveway intersects. They were watching a crop-duster airplane that was passing overhead at that moment. Elizabeth was one of the children who had crossed the road. Trussell slowed as he approached, but Elizabeth suddenly ran onto Brady Road and was struck by the truck. There were no adults at the scene. Trussell ran to a nearby house and asked someone to call 911. Sumter County Emergency Medical Services received the 911 call at 6:46 a.m., and paramedics arrived at 6:53 a.m. The bus arrived thereafter.

Although Brock had instructed her daughter not to cross the street before the bus arrived, she had seen Elizabeth do exactly that "a couple of times" during the prior school year and had to warn her not to do so. She also knew that Elizabeth was a very troubled child who had attempted suicide; that she was hyperactive and took Ritalin; that she was only seven years old; that Brady Road was a busy street; and that Elizabeth did not always follow her instructions. For instance, Elizabeth left for the bus stop too early on many occasions despite her mother's instruction not to. And Brock allowed Elizabeth to make the ten-minute walk from their home to the bus stop by herself on most occasions.[1]

---

[1] We have been seriously handicapped in this case because the citations to the record in both parties' briefs are inaccurate. We urge the bar to carefully check their citations to the record to help ensure that facts in the record are not overlooked.

1. The school district moved for and was granted summary judgment on the ground that it was protected by sovereign immunity and had not waived that immunity. Brock contends that the school district waived sovereign immunity in accordance with OCGA § 33-24-51 because it had purchased liability insurance coverage for damages arising by reason of ownership, maintenance, operation, or use of a motor vehicle, namely the school bus.

But "procurement of insurance under this statute does not constitute a waiver of sovereign immunity in regard to damages caused by the [school district's] negligence not connected with motor vehicles." *Revels v. Tift County*, 235 Ga. 333, 335 (4) (219 SE2d 445) (1975).[2] And the party seeking to benefit from the waiver of sovereign immunity has the burden of establishing it. *Ga. Dept. of Human Resources v. Poss*, 263 Ga. 347, 348 (1) (434 SE2d 488) (1993), overruled on other grounds, *Hedquist v. Merrill Lynch &c.*, 272 Ga. 209, 211 (1) (528 SE2d 508) (2000).

Although the policy covering the school bus is not in the record, the school district admits there is a policy. Construing the evidence and all inferences therefrom in favor of Brock raises the inference that the school district has purchased the insurance described in OCGA § 33-24-51 (a). *Chamlee v. Henry County Bd. of Ed.*, 239 Ga. App. 183, 185 (2) (521 SE2d 78) (1999). But even so, we find no evidence that the incident arose from use of a motor vehicle as provided by the statute.

Brock asserts that the accident involved use of the bus for two reasons. First, she asserts that the driver's failure to arrive on time constitutes misuse of the bus, and that misuse is a form of use of a vehicle. Brock relies on *Lincoln County v. Edmond*, 231 Ga. App. 871 (501 SE2d 38) (1998). However, there is absolutely no evidence in the record that the school bus arrived late. The bus was due at 6:55 a.m., and the evidence shows only that it arrived after 6:53 a.m. The bus driver stated that he was on time. Although the bus driver had been late on other occasions, he explained that he was late only if the bus did not start or if it broke down. There is no evidence that either occurred on that morning. It is not reasonable to infer from these facts that the bus was late on the day Elizabeth was killed. Also, the accident occurred about ten minutes before the scheduled stop, and therefore, any delay in the arrival of the bus could not have contributed to the cause of the accident. And, Brock misconstrues *Lincoln County v. Edmond*. It does not stand for the proposition that failure

---

[2] See also OCGA § 33-24-51 (b) (immunity is waived only "to the extent of the amount of the insurance so purchased"); *Williams v. Solomon*, 242 Ga. App. 807, 810 (4) (531 SE2d 734) (2000) (immunity waived only if and to the extent that insurance was purchased); *Chamlee v. Henry County Bd. of Ed.*, 239 Ga. App. 183, 185-186 (2) (521 SE2d 78) (1999).

of a county employee to use his vehicle to arrive somewhere on time constitutes a misuse of that vehicle, but rather, the opposite. Id. at 873 (1).

Second, Brock contends loading and unloading the bus constitute use of a vehicle. It is true that "the loading of school children as well as the unloading thereof is included in the [definition of] 'use' of a school bus." *Cawthon v. Waco Fire &c. Ins. Co.*, 183 Ga. App. 238, 241 (358 SE2d 615) (1987). But, the facts of this case show that the accident did not arise out of loading the bus. This case is controlled by *Cawthon* and *Roberts v. Burke County School Dist.*, 267 Ga. 665 (482 SE2d 283) (1997).[3] In *Cawthon*, we held that "independent, voluntary actions taken by a school child cannot, alone, initiate the loading procedure. . . ." *Cawthon*, 183 Ga. App. at 241. In that case there was an issue of fact as to whether the bus driver was partly responsible for the student crossing the road before the bus had come to a stop. But we held that if the student was not acting in response to the bus driver's orders, or was acting unreasonably in response to them, then his death while crossing the road would not have occurred within the normal process of loading. Id. at 242. In the present case, the facts are undisputed that Elizabeth crossed the road in contradiction to both the driver's and her mother's orders. Thus, her actions did not involve the process of loading the bus and therefore did not involve "use" of the bus.

In *Roberts*, the Supreme Court, construing an exclusion to a policy, held that a child's death did not arise out of the use of the school bus where a five-year-old child was dropped off at an unauthorized location and had to cross a busy highway to get home. *Roberts*, 267 Ga. at 667-668. The child had walked about four-tenths of a mile and the bus had traveled approximately two miles away from the drop-off before the child was struck. Id. at 665. The Court acknowledged that although "use" of the school bus "can reach beyond actual physical contact," and that it encompasses unloading, the accident was so remote physically and temporarily from when the child disembarked, that the accident did not involve use of the bus. Id. at 667-668.

Here, the bus had not yet arrived, was not in sight, and the fact that Elizabeth was crossing the road was unrelated to the arrival of the bus. There is no evidence that Elizabeth was instructed to cross the road at anytime before the bus had stopped and the driver had given a signal to cross. The bus was too remote from the site of the accident as a matter of law for the accident to be considered as arising out of the use of the bus. *Roberts v. Burke County School Dist.*,

---

[3] Cases interpreting the words "operation," "maintenance" and "use" of a vehicle in an insurance policy are appropriate authority when considering the meaning of those words in the statute. *Ga. Farm &c. Ins. Co. v. Greene*, 174 Ga. App. 120, 122 (329 SE2d 204) (1985).

267 Ga. at 668. Compare *Ga. Farm &c. Ins. Co. v. Greene*, 174 Ga. App. 120, 122-125 (329 SE2d 204) (1985).

2. Brock contends that several county officials were negligent in performing ministerial duties; that therefore they are not entitled to official immunity; and that their negligence caused Elizabeth's death.

Official immunity protects public officers acting in their official capacity from suit unless they negligently perform a ministerial duty or act with actual malice or intent to cause injury while performing a discretionary duty. Ga. Const. of 1983, Art. I, Sec. II, Par. IX (d); *Teston v. Collins*, 217 Ga. App. 829, 830 (1) (459 SE2d 452) (1995). There is no allegation of actual malice here.[4] The distinction between ministerial and discretionary acts is this:

> A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.

(Citation and punctuation omitted.) *Joyce v. Van Arsdale*, 196 Ga. App. 95, 96 (395 SE2d 275) (1990). Compare *Brantley v. Dept. of Human Resources*, 271 Ga. 679, 680-681 (523 SE2d 571) (1999) (different definition under Georgia Tort Claims Act).

(a) Brock contends that Keith Gary, the school board transportation director, failed to perform a required morning "check-ride" procedure to determine whether there were safety risks present during the morning pickups and that he failed to forward to the school principal and Elizabeth's parents the bus driver's report about the alleged dangerous nature of the bus stop.

With regard to the check-ride procedure, Brock cites to no evidence in the record, nor do we find any, of a school board policy requiring him to perform a morning check-ride. The only evidence is that Gary was required to perform annual check-rides and that he never performed one in the morning. Gary denied that he was required to do one in the morning. Rather, the only evidence is that Gary had the discretion to determine when to perform such evaluations and that they were evaluations of the driver, not the children. Therefore, because there was no certain duty to perform a morning check-ride, Gary could not have been negligent in not performing

---

[4] Nor is there any allegation that any of the individual defendants were acting outside the scope of their official duties.

such a nonexistent ministerial duty. There was no waiver of official immunity.

With regard to the bus driver's report, Brock's claim is that Gary failed to relay the driver's report of a dangerous situation at the bus stop, i.e., that her daughter was playing in the street. The evidence shows that Paige Thomas, the driver, discussed with Gary his concern about the number of feet from the road that the students should wait, but not about children running in the road. We find no indication that anyone told Gary that Elizabeth had ever played in the street while waiting for the bus.

Second, Brock does not contend that Gary failed to forward a concern about the location of where the children were to wait. And, even if she had, there is no indication that Gary thought that the location of the waiting area was dangerous. Even if he did, the determination of whether an area is dangerous is certainly a discretionary function because that decision entails examining the facts, reaching a reasoned conclusion, and acting on it in a way not specifically directed. Gary visited the stop and discussed the location of the waiting area with the driver, but because there is no indication that Gary concluded that the location of the stop was dangerous, there can be no breach of any possible duty to report a dangerous situation.

(b) Brock contends that Sylvia Gary, the principal, and Valerie Roberts, the assistant principal, failed to report Elizabeth's past safety violations to the transportation director and to Elizabeth's parents and that the bus driver failed to prepare a written report about these violations. Brock contends that each failure was a violation of a ministerial duty.

The only evidence of any safety violations by Elizabeth comes from Thomas's testimony. He testified that on two or three occasions over about two and a half years he saw Elizabeth on the wrong side of Brady Road as he approached the bus stop in the morning. He stated that he reported each occurrence to the assistant principal and spoke with Elizabeth, but there is an issue of fact as to whether he prepared a written report or spoke to Brock. Roberts admits talking with Thomas about Elizabeth crossing Brady Road. She testified, "Since Mr. Thomas indicated that he had followed up with Elizabeth's parents, I felt there was no need for any further action." There is no evidence that Sylvia Gary, the principal, had direct involvement in or personal knowledge of the communications between Thomas and Roberts regarding these incidents. Brock denies that anyone from the school told her that Elizabeth had been improperly crossing the road.

Brock contends that Thomas negligently failed to prepare a required written report regarding Elizabeth running in the road and to send it to the school. She contends the assistant principal failed to

send a required written report of the incident to the transportation director and to discuss the matter with Brock. She contends that preparing and sending the reports and communicating with Brock were required ministerial duties. Finally, even though she knew that Elizabeth had improperly crossed the road in the past, she states that if she had received notice from the school of the same thing, "I would have worked with school officials to ensure that my daughter remained on the side of the road while waiting for the school bus, out of harm's way."

There is an issue of fact as to whether there were any such definite rules regarding how to report the bus driver's sighting of Elizabeth improperly crossing the road. Brock has introduced no clear written policies or rules that are on point. Instead, she relies on deposition testimony by Keith Gary and Thomas concerning what they believed their "duties" were or what they were "supposed to" or "should do" in certain situations. Gary, Thomas's boss, testified that he did not know if Thomas was required to file a written report when students were seen playing in the road. The assistant principal testified that there were no laws, ordinances, policies, rules, or regulations that required her to generate a discipline report or take any further action relating to the report of Elizabeth crossing the street.

However, regardless of whether there is such a policy, supervision of student safety is considered discretionary:

> The appellate courts of this state have consistently held that the supervision of student safety is a discretionary function, the proper exercise of which entitles school officials to immunity. See *Kelly v. Lewis*, 221 Ga. App. 506, 508 (471 SE2d 583) (1996) (student who was attacked by a gang on his way to school alleged that school officials failed to enforce rules governing supervision of arriving students); *Teston v. Collins*, 217 Ga. App. 829, 830-831 (1) (459 SE2d 452) (1995) (student attacked by a visitor to school claimed officials failed to control third party visitors); *Guthrie v. Irons*, 211 Ga. App. 502, 506 (2) (439 SE2d 732) (1993) (student who was attacked by another student in hallway claimed teacher[ ] failed to follow policy which required [she] monitor halls), disapproved on other grounds, *Gilbert v. Richardson*, 264 Ga. 744 (452 SE2d 476) (1994).

*Caldwell v. Griffin Spalding County Bd. of Ed.*, 232 Ga. App. 892, 893 (503 SE2d 43) (1998). And, supervision of student safety is considered discretionary "even where specific school policies designed to help control and monitor students have been violated. [Cits.]" *Chamlee*, 239 Ga. App. at 184 (1). See also *Perkins v. Morgan County*

*School Dist.*, 222 Ga. App. 831, 835 (2) (476 SE2d 592) (1996); *Wright v. Ashe*, 220 Ga. App. 91, 93-94 (469 SE2d 268) (1996).

Here, the alleged ministerial functions all relate to the supervision, control, and monitoring of student safety, and therefore the rule in *Chamlee, Perkins,* and *Wright* applies. There has been no waiver of official immunity, and summary judgment was properly granted.

Based on the foregoing, we need not reach the appellees' claim that there was no evidence of causation.

*Judgment affirmed. Miller and Mikell, JJ., concur.*

DECIDED NOVEMBER 16, 2000.

*Neal H. Howard, Joann B. Williams*, for appellants.
*Hawkins & Parnell, Thomas G. Tidwell*, for appellees.