### A01A2212. DEKALB COUNTY SCHOOL DISTRICT v. ALLEN.
(561 SE2d 202)

MIKELL, Judge.
Wendy Allen brought a wrongful death action against DeKalb County School District ("DeKalb County"), its employee, Romeo Henry, and Joey S. Hedgemon after her seven-year-old daughter, Shaniecia Allen ("Shaniecia"), was struck and killed by an automobile driven by Hedgemon. Hedgemon was dismissed from the lawsuit after Allen settled her claims against him. DeKalb County and Henry filed a motion for summary judgment, which was denied. We affirm.[1]

"In reviewing a grant or denial of summary judgment, this Court conducts a de novo review of the evidence."[2] To prevail at summary judgment under OCGA § 9-11-56 (c), the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmovant, warrant judgment as a matter of law.[3]

Viewed most favorably to Allen, the evidence shows that at approximately 6:30 a.m. on December 2, 1998, Allen drove Shaniecia to her bus stop in front of the apartment complex where they lived. Though other residents of the complex were picked up by their school buses inside the complex, Shaniecia's bus driver had told Allen to have Shaniecia standing at the complex entrance when the bus

---

[1] Henry, the bus driver, was dismissed in the trial court's order denying the motion for summary judgment because he was not served.

[2] (Citation and punctuation omitted.) *Carter v. Tokai Financial Svcs.*, 231 Ga. App. 755 (500 SE2d 638) (1998).

[3] Id.

approached, so that the bus would stay on schedule. Allen normally turned right out of the complex entrance and waited for the school bus near the curb in the westbound acceleration lane, which was adjacent to Hillandale Drive, a two-lane highway. Shaniecia always sat in the back seat on the driver's side of Allen's car as they waited for the bus. The bus would stop in the westbound lane on Hillandale Drive near Allen's car. If the bus stopped at the car door, Shaniecia would exit the car and step onto the bus. If the bus stopped behind the car, Shaniecia would exit the car and walk behind the car in the acceleration lane to board the bus.

On the day that the accident happened, Allen testified that she saw a bus approaching with its yellow lights flashing when she arrived at the front of the complex. The bus was traveling westbound on Hillandale and pulled into the deceleration lane, which was the same lane as the acceleration lane Allen usually waited in, except that it was on the other side of the complex entrance. When the bus stopped, it was partially blocking the complex entrance. By that time, Allen had turned into the acceleration lane and had stopped at the corner of the lane and the complex entrance such that she could see the bus through her rearview mirror.

Allen testified that she never saw the bus's red lights, only yellow lights, and that she let Shaniecia out of the car once she saw the yellow lights. Allen saw Shaniecia reach the open doors of the bus. Since it was still dark, Allen did not actually see Shaniecia board the bus but assumed that she did so. Allen drove away after she saw the doors open. At that time, she saw the bus flash its high beam lights at her through her rearview mirror, but she thought that the bus driver was simply saying hello.

Allen made a u-turn at the next block and was driving eastbound toward the apartment complex when she saw the bus driving toward her. Allen testified that once she saw the number on the bus, she knew it was not Shaniecia's bus. She also noticed Shaniecia, who was moving back and forth and waving her arms in the same area where Allen had initially dropped her off. As she approached the complex, Allen saw another car traveling westbound on Hillandale toward her. Allen passed Shaniecia and waited for this car to pass so that she could make a u-turn to pick up Shaniecia. Allen testified that while waiting to turn, "It looked like [Shaniecia] wanted to come toward me and get my attention. She may have thought I was trying to leave her or something." Allen also stated, "I started to roll my window down. I don't know if at some point I began to roll the window down so I could say something to her; but I thought that if I say [sic] something, she may think I'm telling her to come out and she would run out, so I didn't say anything." Allen did not flash her lights at the oncoming car because she did not think that Shaniecia would run into the

street as she had been told to look both ways and not to run into traffic.

The next thing Allen heard was the sound of the car as it hit Shaniecia. Allen exited her car, but returned to check on her son, who was also in the car. She then noticed that the school bus had backed into the entrance to the complex.

The bus driver told the police that he flashed his lights at Allen after he realized the child was not one of his passengers. The bus driver also said that he backed into the entrance of the complex with his flashers on while waiting for the child to get back to her mother. Nelson Brookings, one of the high school students on the bus that morning, stated that when the bus stopped in the deceleration lane of Hillandale Drive on the east side of the apartment complex entrance, a car was already parked in the acceleration lane on the west side of the entrance. A little girl exited the car and began to walk toward the bus, but when she reached the center median of the driveway entrance to the complex, she turned around and walked back to where she had been dropped off. Based on Brookings' observations, the little girl did not get closer than 20 feet to the bus. Brookings could not recall whether the bus driver opened the door when the girl was walking toward the bus.

Brookings saw Allen drive off, turn around, and drive toward the complex. He stated that as she did so, the bus backed into the east side of the divided driveway of the complex, which would have been the entrance side. When the bus was stopped, no part of it extended into the acceleration or deceleration lane on Hillandale Drive. As the bus waited to turn left onto Hillandale Drive, the little girl ran toward her mother's car and was struck by an oncoming vehicle.

Hedgemon, the driver of the vehicle that struck Shaniecia, testified that when he first saw the school bus, it was perpendicular to Hillandale Drive with its front facing Hillandale. He recalled that some part of the bus was in the deceleration lane. Though it appeared that the bus was leaving the complex, it was not moving when he first saw it, and none of its lights were activated. Nevertheless, Hedgemon slowed down because he thought that he would probably have to stop. Hedgemon also testified that he would have stopped had he seen flashing lights. Hedgemon first saw Shaniecia when she ran in front of his car before the point of impact. When asked where he was when he struck her, Hedgemon replied, "I would say I was about even with [the bus], as for middle, towards the end of being perpendicular."

1. In its first enumeration of error, DeKalb County argues that it did not waive its sovereign immunity under OCGA § 33-24-51 by purchasing liability insurance because the accident did not arise out of the "use" of the school bus. We disagree.

In relevant part, OCGA § 33-24-51 provides:

(a) A . . . county[ ] or any other political subdivision of this state is authorized in its discretion to secure and provide insurance to cover liability for damages on account of bodily injury or death resulting from bodily injury to any person or for damage to property of any person, or for both arising by reason of ownership, maintenance, operation, or use of any motor vehicle by the . . . county. . . . (b) Whenever a . . . county . . . shall purchase the insurance authorized by subsection (a) of this Code section to provide liability coverage for the negligence of any duly authorized officer, agent, servant, attorney, or employee in the performance of his official duties, its governmental immunity shall be waived to the extent of the amount of insurance so purchased.

There is no dispute that DeKalb County purchased liability insurance to provide coverage for bodily injury or death caused by an accident "resulting from the ownership, maintenance or use" of a covered auto. Thus, the determinative issue here is whether the incident arose from the "use" of the bus.

DeKalb County relies on *Brock v. Sumter County School Bd.*[4] and *Roberts v. Burke County School Dist.*[5] in support of its position that the accident did not arise out of the use of the school bus. Both cases, however, are distinguishable from the instant case. In *Brock*, the children who rode the school bus were instructed to wait for the bus ten to twenty feet from the road and to cross the road only after the school bus arrived. Further, they were to arrive at the bus stop five minutes before the scheduled pickup time. While waiting for the bus, a seven-year-old child suddenly ran into the street and was struck and killed by an oncoming truck. The evidence showed that the child's mother had also instructed her not to cross the street until the bus arrived. We found that the accident did not involve the use of the bus because the child crossed the street contrary to the orders of the bus driver and her mother.[6] Furthermore, the child did not cross the street because of the bus's arrival.[7] Therefore, we held the county immune from liability.

In *Roberts,* the decedent was a five-year-old kindergarten student, who walked a half-mile each day to get home after the school bus dropped him off. The parents requested and the school district

---

[4] 246 Ga. App. 815 (542 SE2d 547) (2000).

[5] 267 Ga. 665 (482 SE2d 283) (1997).

[6] *Brock*, supra at 818 (1).

[7] Id.

permitted the irregular drop-off location even though it required the children to walk along a heavily traveled road with no crosswalks and a 55-mph speed limit.[8] The child was walking home with other children when he suddenly ran across the road toward his house and was struck by a van. At the time of the accident, the school bus had traveled approximately two miles from the drop-off location. Our Supreme Court held that the trial court correctly concluded that the accident did not arise out of the use of the bus.[9] Like *Brock,* the child in *Roberts* did not run into the street because of the bus driver's instructions or the presence of the bus.

We express no opinion about whether DeKalb County is liable for this unfortunate accident. However, the analysis that we must apply to determine whether sovereign immunity bars the claim is different from that we would apply to determine liability.

> The term "use" of a school bus in a situation such as this, that is, in considering the scope of insurance policy provisions[,] is dependent to a great extent on the circumstances of the case. This is necessarily so because an exact or "bright-line" definition of the term is "elusive, and is not capable of a definition which will leave everyone 'comfortable.' "[10]

In this case, but for the bus's presence, the child would not have exited her mother's car and the accident would not have happened. In other words, because of the use of the school bus, the child left the safety of her mother's car. Regardless of whether the bus in question was the child's bus, "[t]he bus was still being 'utilized' in the plain and ordinary sense of the word."[11] Therefore, we find that the county is not immune from liability, and the insurance coverage is available to appellees should they prove liability.

2. Next, DeKalb County argues that, as a matter of law, the bus driver did not owe a duty to Shaniecia. We disagree.

We have previously held that the definition of the "use" of the bus does include its loading and unloading of children.[12] Further, "the process of loading a school bus is initiated and controlled directly by the bus driver."[13] Here, Allen testified that she saw the bus driver open the doors for the child. Brookings averred that he did

---

[8] Id.

[9] *Roberts*, supra at 668.

[10] (Citations omitted.) Id. at 667.

[11] Id.

[12] See *Cawthon v. Waco Fire &c. Ins. Co.*, 183 Ga. App. 238, 241 (358 SE2d 615) (1987), rev'd on other grounds, 259 Ga. 632 (386 SE2d 32) (1989).

[13] Id.

not know whether the driver opened the doors. In his statement to the police, the bus driver did not address whether he opened the doors for the child. Thus, there remains a genuine issue of fact as to whether the bus driver initiated the loading procedure, assuming the duty of loading.

We have held that the duty of unloading encompasses not only depositing the children outside the bus but assuring that they reach a place of safety, which may include crossing a street.[14] The bus driver stated that he utilized his flashing lights and waited for Shaniecia to return to her mother. Thus, a jury could find that by his conduct, he assumed the duty of unloading. Accordingly, we cannot find that, as a matter of law, the bus driver did not owe a duty to Shaniecia. Should the jury conclude that a duty was owed, whether that duty was breached is also a question for its determination.

3. Lastly, DeKalb County argues that, as a matter of law, Shaniecia assumed the risk of her injuries. We disagree.

> The affirmative defense of assumption of the risk bars a plaintiff from recovering on a negligence claim if it is established that [a plaintiff], without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free choice as to whether to engage in the act or not. In Georgia, a defendant asserting an assumption of the risk defense must establish that the plaintiff (1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed [herself] to those risks.[15]

Further, "[k]nowledge of the risk is the watchword of assumption of the risk, and means both actual and subjective knowledge on the plaintiff's part. The knowledge that a plaintiff who assumes a risk must subjectively possess is that of the specific, particular risk of harm associated with the activity or condition that proximately causes injury."[16] Moreover, as a child of tender years, Shaniecia can only be said to have assumed the risk if the danger was patent, obvious, and known to her and she was able to appreciate and avoid it.[17]

In this case, there is no evidence that Shaniecia had full actual and subjective knowledge of the danger she faced. Allen testified that

---

[14] *Ga. Farm &c. Ins. Co. v. Greene,* 174 Ga. App. 120, 123-124 (329 SE2d 204) (1985).

[15] (Punctuation and footnotes omitted.) *Vaughn v. Pleasent,* 266 Ga. 862, 864 (1) (471 SE2d 866) (1996).

[16] (Citation omitted.) *Clemmons v. Smith,* 246 Ga. App. 643, 644 (1) (540 SE2d 623) (2000).

[17] See *City of Atlanta &c. Recreation Auth. v. Merritt,* 172 Ga. App. 470, 471 (1) (323 SE2d 680) (1984).

Shaniecia had never been on such a busy road. Had the child looked both ways, which is not clear from the record, she still may have run into the street because the bus may have obscured her vision. The evidence regarding the bus's location is in dispute. Thus, Allen's general instruction to Shaniecia that she look both ways before crossing the street does not preclude Allen's recovery.

We also cannot conclude as a matter of law that Shaniecia voluntarily placed herself in a position of peril. As we discussed in Division 1, but for the presence of the bus, the child would never have left the safety of her mother's car. A fortiori, there would have been no need for her to cross the street to return to her mother's car. The question of assumption of the risk is ordinarily reserved for the jury, and summary adjudication is not appropriate except where the evidence is plain, palpable, and undisputed.[18] Accordingly, since DeKalb County has not conclusively established that Shaniecia assumed the risk by plain, palpable, and undisputed evidence, the issue must be determined by a jury.

*Judgment affirmed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED FEBRUARY 27, 2002 — ■■■■■■■■

*Austin & Sparks, John B. Austin,* for appellant.
*Thomas, Means, Gillis & Seay, Quinton Seay, Derek M. Wright,* for appellee.

---

[18] *Allen v. King Plow Co.,* 227 Ga. App. 795, 799 (4) (490 SE2d 457) (1997).