### A11A1901. BOARD OF COMMISSIONERS OF PUTNAM COUNTY v. BAREFOOT.
(721 SE2d 612)

DILLARD, Judge.

The Board of Commissioners of Putnam County ("the County") sought summary judgment against Wendy Barefoot's personal-injury action, alleging that the County was entitled to immunity from suit. The trial court denied the County's motion for summary judgment, holding that sovereign immunity had been waived by the County's purchase of liability insurance covering injuries arising from the "use" of a County vehicle. On appeal from this denial, the County alleges that the trial court erred by (1) holding that the use of a motor vehicle "may be remote in time with respect to plaintiff's harm" and still give rise to waiver; (2) applying an overly broad construction to the phrase "use of a motor vehicle"; (3) holding that the use of the vehicle in question was not too incidental to give rise to waiver; and (4) holding that Barefoot presented sufficient evidence to show that her injury was the result of a condition created by the vehicle in question. For the reasons noted infra, we reverse.

Viewed de novo in the light most favorable to Barefoot,[1] the record shows that on December 14, 2007, Barefoot was traveling

---

[36] *Hart*, supra.

[1] *See Harmon v. Innomed Techs, Inc.*, 309 Ga. App. 265, 265 (709 SE2d 888) (2011) ("We review de novo a trial court's grant of summary judgment, construing the evidence in a light

down Lower Harmony Road in Putnam County when she saw a truck approaching in the other direction. As the truck came closer and the road narrowed, Barefoot realized that it was in her lane and that the vehicles would collide if she did not move.

Barefoot abruptly swerved to miss the oncoming truck but then lost control of her SUV as she felt it simultaneously shake across the road and slide around as if it were on black ice. She lost consciousness soon thereafter when her SUV came to a stop nose-down in a creek beside the road.

Realizing that Barefoot had lost control and crashed, the driver and the passenger of the truck she allegedly swerved to miss[2] called 911 and waited with her until help arrived. As a result of the accident, Barefoot suffered, among other injuries, fractured ribs, a pulmonary contusion, damage to her jaw, and an impact to her skull that required the insertion of metal plates and left numbness in her face.

Thereafter, Barefoot filed suit against the driver of the truck and against the County.[3] Barefoot alleged that she lost control of her vehicle as a result of excessive gravel that had recently been used to repair the roadway, and the responding patrol officer noted in a report that a loss of control and surface debris were contributing factors to the accident. Both the driver and the passenger of the truck also testified that loose gravel was on the road at the time of the accident and that they too had experienced difficulty controlling their vehicle when traveling the same road earlier in the day.

In response to these allegations, the County moved for summary judgment on the basis of sovereign immunity, contending that no County vehicle was in "use" when Barefoot's accident occurred and that no County employee was involved in same. In reply, Barefoot admitted that no County vehicle was involved in the accident but believed there was a question as to whether a County vehicle was "used" so as to waive sovereign immunity.

In this regard, it is undisputed that on December 13, 2007, the day before Barefoot's accident, a County employee conducted road maintenance on the road at issue by using a vehicle known as a "pot-patcher."[4] The employee testified that his job was to repair cracks and holes in the roadway by using his best judgment to fill them with a mixture of tar and gravel. The amount of gravel used

---

most favorable to the nonmoving party.'').

[2] The driver and the passenger both denied that the truck was ever in Barefoot's lane.

[3] The suit against the driver of the truck was later dismissed without prejudice at Barefoot's request.

[4] The record shows that the pot-patcher has two engines, drives up and down roads, and is self-propelled.

would depend on the consistency of the tar, and the employee noted that if, in his assessment, he had put down too much gravel, he would call another County employee to sweep it up. He also testified that even when the appropriate amount of gravel is used, there is no guarantee that it will remain in place because heavy traffic can destroy patchwork—and here, it is undisputed that the road at issue was subject to heavy traffic.

Ultimately, the trial court determined that there was sufficient evidence of the "use" of a County vehicle to find a waiver of sovereign immunity pursuant to OCGA § 33-24-51. This appeal by the County follows.

At the outset, we note that summary judgment is appropriate when "the moving party can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law."[5] This burden is met by a defendant when "the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of [the] plaintiff's case."[6] And if the moving party meets this burden, "the nonmoving party cannot rest on its pleadings, but must point to specific evidence giving rise to a triable issue."[7] With these guiding principles in mind, we turn now to the County's enumerations of error.

1. The County first contends that the trial court erred in holding that the use of the pot-patcher was not too remote in time to waive sovereign immunity. We agree.

First, we note that the doctrine of sovereign immunity "protects governments from legal action unless they have waived their immunity from suit."[8] And sovereign immunity "can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver."[9]

For example, a county may waive sovereign immunity, pursuant to OCGA § 33-24-51, by purchasing liability insurance that will cover damages "arising by reason of ownership, maintenance, operation, or *use* of any motor vehicle . . . ."[10] A determination of "whether an event arises from the 'use' of a motor vehicle depends largely on the

---

[5] *Thompson v. City of Fitzgerald*, 248 Ga. App. 725, 725 (548 SE2d 368) (2001).

[6] *Id.* at 725-26 (punctuation omitted).

[7] *Id.* at 726.

[8] *Williams v. Whitfield County*, 289 Ga. App. 301, 302 (656 SE2d 584) (2008).

[9] *DeKalb State Court Prob. Dep't v. Currid*, 287 Ga. App. 649, 651 (1) (653 SE2d 90) (2007) (punctuation omitted).

[10] OCGA § 33-24-51 (a) (emphasis supplied); *see also* OCGA § 36-92-2 (providing the monetary limits up to which sovereign immunity is waived "for a loss arising out of claims for the negligent use of a covered motor vehicle").

circumstances, and a bright-line definition is elusive."[11] But statutes that provide for a waiver of sovereign immunity, such as OCGA § 33-24-51, "are in derogation of the common law and thus are to be strictly construed *against* a finding of waiver."[12] Keeping the foregoing in mind, in construing the meaning of "use," we have explained that "the question to be answered is whether the injury originated from, had its origin in, grew out of, or flowed from the use of the motor vehicle *as a vehicle*."[13] However, while the term "does extend beyond actual physical contact," it "does not imply remoteness."[14] And this is reflected in our case law in that when we have found a waiver of sovereign immunity for the "use" of a motor vehicle, it has concerned motor vehicles that were actively in use when the injury arose—which clearly was not the case with the pot-patcher at issue here.

Indeed, although there is a dispute as to whether Barefoot's accident was caused by excess gravel left in the road by the pot-patcher, it is undisputed that the County pot-patcher was not present when Barefoot's accident occurred. Thus, whatever role the pot-patcher played approximately 24 hours before the accident when it dispersed gravel on Lower Harmony Road, it was no longer being used as a motor vehicle at the time Barefoot's injuries arose.[15] This is in contrast to the cases in which we have held that a vehicle was "in use" for purposes of waiving sovereign immunity under OCGA § 33-24-51 when the vehicle was quite clearly "being used" as a motor vehicle at the same time the injury occurred.[16] And given that we

---

[11] *Gish v. Thomas*, 302 Ga. App. 854, 861 (2) (691 SE2d 900) (2010) (punctuation omitted); *see also Williams*, 289 Ga. App. at 304 (same).

[12] *Gish*, 302 Ga. App. at 860 (2) (emphasis supplied).

[13] *Id.* at 861 (2) (punctuation omitted); *see also Williams*, 289 Ga. App. at 304 (same).

[14] *Mitchell v. City of St. Marys*, 155 Ga. App. 642, 645 (2) (271 SE2d 895) (1980) (punctuation omitted).

[15] *Cf. Am. Cas. Co. v. Fisher*, 195 Ga. 136, 141 (23 SE2d 395) (1942) ("When the goods have been taken off the automobile and have actually come to rest, when the automobile itself is no longer connected with the process of unloading, and when the material which has been unloaded from the automobile has plainly started on its course to be delivered by other power and forces independent of the automobile and the actual method of unloading, the automobile then may be said to be no longer in use."). *Accord Pavlik v. St. Paul Mercury Ins. Co.*, 291 F2d 124, 126 (7th Cir. 1961) (holding that vehicle was no longer in use when accident occurred after goods were unloaded); *Zurich Gen. Accident & Liab. Ins. Co. v. Am. Mut. Liab. Ins. Co. of Boston*, 192 A. 387 (N.J. 1937) (same).

[16] *Compare McElmurray v. Augusta-Richmond County*, 274 Ga. App. 605, 611 (2) (b) n.36 (618 SE2d 59) (2005) (holding that "where a truck is *being used* for spreading sewage sludge, damages resulting from the spreading of the sludge from the truck are injuries arising by reason of use of the truck" and noting that "[t]he land would have been contaminated when the sewage sludge was applied" (emphasis supplied)), *and Mitchell*, 155 Ga. App. at 645 (2) (holding that "where a truck is *being used* for mosquito eradication, damages resulting from the spraying of insecticide from that truck are injuries arising by reason of the 'use' of that truck" (emphasis supplied)), *with City of Rossville v. Britton*, 170 Ga. App. 1, 3 (2) (316 SE2d

must strictly construe OCGA § 33-24-51 against a finding of waiver,[17] we disagree with the trial court that the use of the County's pot-patcher gave rise to a waiver of sovereign immunity under these facts. Thus, we agree with the County that any use of the pot-patcher was too remote in time to waive sovereign immunity pursuant to OCGA § 33-24-51, and we reverse the trial court's denial of summary judgment.

2. Because we have held that the trial court erred in denying summary judgment based on the County's first enumeration of error, we need not consider the remaining enumerations.

Accordingly, for the foregoing reasons, we reverse the trial court's denial of summary judgment to the County.

*Judgment reversed. Mikell, C. J., and Smith, P. J., concur.*

DECIDED DECEMBER 16, 2011 — 

*Owen, Gleaton, Egan, Jones & Sweeney, W. Seaborn Jones, Derrick L. Bingham*, for appellant.

*Savage, Turner, Pinson & Karsman, Robert B. Turner, Kathryn H. Pinckney, M. Steven Heath, Christopher D. Britt, Brenda H. Trammell*, for appellee.

---

16) (1984) (holding that city garbage truck was not "in use" when a child was injured by a dumpster placed by the truck two days before). *Cf. Roberts v. Burke County Sch. Dist.*, 267 Ga. 665, 665-66 (482 SE2d 283) (1997) (holding that school bus was not "in use" when it dropped child off, left the scene, and child was struck by another vehicle); *DeKalb County Sch. Dist. v. Allen*, 254 Ga. App. 66, 69-70 (1) (561 SE2d 202) (2002) (holding that school bus was "in use" when it was at scene to pick up child and child was struck by another vehicle); *Brock v. Sumter County Sch. Bd.*, 246 Ga. App. 815, 817-18 (1) (542 SE2d 547) (2000) (holding that school bus was not "in use" when child was struck by another vehicle while waiting for the bus because school bus was not at the scene).

[17] *See Gish*, 302 Ga. App. at 860 (2).